Larry **WEST**, a minor by his mother, Emma West, as next friend, et al., Plaintiffs,

v.

Max M. **COLE**, Individually and as Director of the Mississippi State Department of Public Welfare, et al., Defendants.

No. GC 74–77–K.

United States District Court, N. D. Mississippi, Greenville Division.

Feb. 19, 1975.

———◆———

Stanley L. Taylor, Oxford, Miss., Barry H. Powell, Jackson, Miss., for plaintiffs.

NLSP Center on Social Welfare Policy and Law, Inc., by Adele M. Blong, William Rutzick, Richard Gabriele, New York City, of counsel.

Thomas E. Childs, Asst. Atty. Gen., Jackson, Miss., for defendants.

Falton O. Mason, Jr., Asst. U. S. Atty., Oxford, Miss., Carl H. Harper, Atlanta, Ga., for HEW as amicus curiae.

## MEMORANDUM OPINION

KEADY, Chief Judge.

In this class action plaintiffs seek injunctive and declaratory relief, under 42 U.S.C. § 1983, against the refusal of Mississippi state and county officials to certify for Medicaid assistance minor children currently receiving Supplemental Security Income disability payments under 42 U.S.C. § 1381 et seq. After a preliminary hearing at which the court declined to grant temporary relief, the parties waived further evidentiary hearing and submitted the case for a merits determination on the pleadings, stipulated facts, interrogatories, answers thereto, and briefs of counsel. Pursuant to the court's request, the Secretary of Health, Education, and Welfare presented a brief as amicus curiae.

Plaintiffs and the subclasses which they represent consist of all children under the age of 18 residing in Mississippi who are presently receiving Supplemental Security Income (SSI) disability payments and who, except for the fact that they are receiving SSI payments, would be eligible for Aid to Families with Dependent Children (AFDC) benefits under the AFDC standards in effect in Mississippi on January 1, 1972; all recipients of SSI disability payments under the age of 18 who would be eligible for Medicaid assistance except for the fact that they are less than 18 years old; and all caretaker relatives of these child-plaintiff subclasses.[1]

Defendants, who are sued individually and in their official capacities, are Max M. Cole, Commissioner of the Mississippi State Department of Public Welfare, Thomas O. Metcalfe, Jr., Director of the Mississippi Medicaid Commission, and Raymond G. Messer, Sr. and Roy E. Povall, Directors respectively of the Washington County and Hinds County Departments of Public Welfare.[2] Defendants Messer and Povall are also sued as representatives of the class consisting of all directors of county departments of public welfare.

The named plaintiffs include three families whose personal circumstances are typical of the conditions shared by the plaintiff class.

1. The court on October 31, 1974, entered an order under Rule 23(c) certifying the suit as a class action both for the plaintiff classes as above noted and also for the defendant class of directors of county departments of public welfare.

2. By order of January 21, 1975, the court determined that additional parties necessary for just adjudication under Rule 19 had not been made parties to the action and directed their joinder. Subsequently, those parties— S. E. Kossman, Jesse O. Adcock, D. W. Williamson, William G. Burgin, Jr., Edgar J. Stephens, Jr., Milton Case, and Robert M. Logan, Chairman and members, respectively, of the Mississippi Medicaid Commission; and Glen H. Davidson, Thomas P. Waits, Wayne Dowdy, H. A. Scott, and E. U. Parker, Chairman and members, respectively, of the State Board of Public Welfare—waived service of process, entered appearances as defendants, and adopted all the pleadings and briefs filed by the other named defendants.

Emma West lives with her seven children at Hollandale in Washington County. Six of her children are without disability, and they receive a total of $96 per month in AFDC benefits. The seventh child, 10 year old Larry, suffered severe brain damage when he was 5 and is now receiving federal SSI disability benefits. Soon after Larry's SSI benefits began, however, the county department of public welfare, pursuant to a Mississippi Welfare Department directive, terminated his Medicaid benefits, which he had been receiving continuously since before January 1, 1972.

Christine Williams also resides in Hollandale with her two children and disabled mother. She currently receives $28 per month in AFDC benefits for one of the children. The other, 13 year old Sandra, is severely retarded and recently began receiving SSI disability benefit payments. When SSI benefits began for Sandra, the county department of public welfare, as it had done in the case of Larry West, terminated the Medicaid benefits which Sandra had been receiving, together with AFDC payments, continuously since before January 1, 1972.

Finally among the named plaintiffs, Cynthia Ann Lofton is an 8 year old victim of cerebral palsy, living with her mother and seven brothers and sisters. The Loftons' total monthly income consists of $108 in AFDC benefits and Cynthia Ann's $146 SSI check. Prior to SSI, Cynthia Ann had received Medicaid and had been included in her family's AFDC budget, although the family, because of its size, was already receiving maximum AFDC benefits. Thus, if Cynthia Ann foregoes SSI to qualify for Medicaid and AFDC, her family will receive no additional AFDC benefits; as matters now stand, her SSI qualification deprives her of Medicaid benefits.

Although this case involves a statutory maze of extraordinary complexity, the essential controversy between the parties may be simply stated. As disabled individuals of low income status, plaintiffs qualify for cash assistance under the federally-run SSI program. Many also qualify for the less lucrative cash benefits of the federally-assisted but state-operated AFDC plan.[3] Further, since they are physically disabled, the plaintiff children have pressing medical needs which, owing to their poverty, may be met only through the federally-assisted but state-administered Medicaid program. Plaintiffs claim entitlement to both the higher cash benefits of the SSI program and the medical care provided by the Medicaid assistance plan. Defendants contend that federal law does not require that both SSI and Medicaid benefits be made available to plaintiffs. Defendants' position is that because of the interaction of federal and state law, plaintiffs must elect to receive benefits either under the SSI plan or under both the AFDC and Medicaid programs; under the defendants' interpretation, plaintiffs cannot forego the lesser AFDC payment and reap the benefits of both SSI and Medicaid.

I.

Before addressing the merits of this controversy, we must first deal with defendants' contention that the case involves restraint of the enforcement of state statutes, thus requiring the convening of a three-judge court pursuant to 28 U.S.C. § 2281. In their amended complaint, plaintiffs seek relief under three causes of action. Under the first and second causes of action, plaintiffs request declaratory and injunctive relief against enforcement of a state statute and concomitant statewide regulations on the ground that the statute and regulations conflict with a federal statute and therefore violate the Supremacy Clause. Under the third cause of action, plaintiffs challenge the state plan as violative of the Equal Protection Clause, but seek only declaratory relief.

3. An amendment to the AFDC program adopted concurrently with the passage of SSI effectively prohibits beneficiaries of SSI funds from qualifying for AFDC benefits. 42 U.S.C. § 602(a)(24). A needy individual, then, may receive benefits under either SSI or AFDC, but not both.

With respect to the first two causes of action, it is well settled that allegations of Supremacy Clause violations do not require three-judge court treatment. Shea v. Vialpando, 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974); Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). Also, even where, as in the third cause of action, a state statute is challenged as violative of some other constitutional provision which might ordinarily occasion a three-judge court, a three-judge court is nevertheless improper if only declaratory relief is sought. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); Sands v. Wainwright, 491 F.2d 417 (5 Cir. 1973); Triple A Realty v. Florida Real Estate Commission, 468 F. 2d 245 (5 Cir. 1972).

These familiar principles, when considered in light of the narrow construction judicially accorded the three-judge court statute, require us to conclude that a three-judge court is not required in this case. With jurisdiction properly invoked under 28 U.S.C. §§ 1331, 1343, 2201 and 2202, this single-judge court is competent to adjudicate the issues raised by the complaint.

## II.

In attempting to unravel the complicated questions presented in the case sub judice, it is essential that the basic structure of the pertinent welfare programs be understood.

Prior to January 1, 1974, there were four categorical assistance welfare programs, consisting of Old Age Assistance (Title I), Aid to Families with Dependent Children (Title IV), Aid to the Blind (Title X), and Aid to the Permanently and Totally Disabled (Title XIV). Each program provided cash assistance and was administered by the states, pursuant to the provisions of the Social Security Act, 42 U.S.C. § 301 et seq. On January 1, 1974, however, the Old Age Assistance, Aid to the Blind, and Aid to the Permanently and Totally Disabled programs were terminated by Congress and replaced by the Supplemental Security Income Program (SSI), a fully federally-funded and federally-administered program of cash benefits to the aged, blind and disabled. 42 U.S.C. § 1381 et seq. Administration of the Aid to Families with Dependent Children (AFDC) program was left to the states, although the bulk of AFDC funds are federally supplied.

Even though designed to supplant three of the four categorical assistance plans, the SSI program did effect several changes in the scope of aid to the aged, blind and disabled. Prior to SSI, disabled persons under 18 years of age were ineligible for disability benefits under the old Aid to the Permanently and Totally Disabled program. Under the former plan, disabled individuals under 18 could qualify only for AFDC benefits. Under SSI, disability benefits are extended to otherwise eligible disabled persons of all ages. 42 U.S.C. § 1382c(a)(3). Another, more significant change wrought by SSI was the liberalization of the income eligibility and benefit levels, which provide substantially more assistance to a greater number of people than under the three former state-administered plans. Finally, and as previously noted, Congress specified that any individual who qualified for and received SSI payments was no longer eligible for cash benefits under AFDC. 42 U.S.C. § 602(a)(24).

In addition to the SSI and AFDC cash assistance programs, Congress has enacted the federally-assisted but state-administered Medicaid Assistance Program, through which medical assistance is furnished to the aged, blind, disabled and families with dependent children whose income and financial resources fall below stated minimums. 42 U.S.C. § 1396a et seq. As in the case of the AFDC program, state participation in the Medicaid plan is voluntary. Federal Medicaid moneys are made available to participating states which have submit-

ted, and had approved by the Secretary of Health, Education, and Welfare, plans for medical assistance. Although states are allowed discretion in formulating their plans for medical assistance, 42 U. S.C. § 1396a(a) prescribes certain standards which the state plans must satisfy.

Among the federal Medicaid restrictions binding on participating states are the requirements of 42 U.S.C. §§ 1396a(a)(10)(A) and 1396a(f). Section 1396a(a)(10)(A) generally includes all recipients of SSI benefits as Medicaid-eligible:

> "(a) A State plan for medical assistance must— . . . provide—
> (A) for making medical assistance available to all individuals receiving aid or assistance under any plan of the State approved under subchapter I, X, XIV, or XVI, or part A of subchapter IV of this chapter, or with respect to whom supplementary security income benefits are being paid under subchapter XVI of this chapter . . . ."

§ 1396a(f) first provides that SSI benefits shall not be counted in determining income eligibility for Medicaid assistance, and then carves out a limited exception to the operation of § 1396a(a)(10)(A) by specifying certain individuals eligible for SSI benefits to whom the State is *not* required to extend Medicaid assistance:

> "Notwithstanding any other provision of this subchapter, . . . no State . . . shall be required to provide medical assistance to any aged, blind, or disabled individual (within the meaning of subchapter XVI of this chapter) for any month *unless such State would be (or would have been) required to provide medical assistance to such individual for such month had its plan for medical assistance approved under this subchapter and in effect on January 1, 1972, been in effect in such month,* except that for this purpose any such individual shall be deemed eligible for

medical assistance under such State plan if (in addition to meeting such other requirements as are or may be imposed under the State plan) the income of any such individual as determined in accordance with section 1396b(f) of this title (*after deducting any supplemental security income payment and State supplementary payment made with respect to such individual, and incurred expenses for medical care as recognized under State law*) is not in excess of the standard for medical assistance established under the State plan as in effect on January 1, 1972." (Our emphasis. The first italized portion constitutes the exception to Medicaid eligibility; the second portion relates to computation of income for Medicaid-eligible recipients.)

On October 10, 1969, Mississippi elected to enter into the Medicaid program and submitted, and had approved, a plan for medical assistance. The state's enabling legislation, codified as Miss.Code Ann. § 43–13–101 et seq., was in effect on January 1, 1972, and at all times since. Relevant to the case sub judice is § 43–13–115, the section which defines persons who are eligible for Medicaid assistance:

> "Recipients of medical assistance shall be the following persons only:
> (1) Who are qualified for public assistance grants under provisions of Titles I [Old Age Assistance], IV [Aid to Families with Dependent Children], X [Aid to the Blind] or XIV [Aid to the Permanently and Totally Disabled] of the Social Security Act, as administered by the State of Mississippi, as same existed in law, on the effective date of the Mississippi Medicaid Law [October 10, 1969];"

The Mississippi Medicaid Law thus apparently limits Medicaid recipients to persons eligible for assistance under one or more of the four categorical assistance welfare programs, as those programs existed on October 10, 1969.

### III.

Plaintiffs contend that defendants' refusal to certify for Medicaid children receiving SSI disability payments is contrary to the letter and spirit of the foregoing federal statutes and, when tested by the Supremacy and Equal Protection Clauses, cannot stand.

■ We hold that Congress intended to require, and did require, that Mississippi make available Medicaid benefits to all recipients of SSI disability payments under the age of 18 who, except for the fact that they are receiving SSI payments, would qualify for AFDC benefits under the AFDC standards in effect in Mississippi on January 1, 1972. We cannot agree, however, that all SSI disability recipients under the age of 18 are entitled, ipso facto, to Medicaid benefits.

■ As all parties concede, although state participation in the federal Medicaid program is voluntary, once a state opts for the Medicaid program, as Mississippi has done, it becomes bound by all federal regulations and standards, including federal eligibility requirements. Triplett v. Cobb, 331 F.Supp. 652 (N.D.Miss.1971); Schaak v. Schmidt, 344 F.Supp. 99 (E.D.Wis.1971); Bass v. Richardson, 338 F.Supp. 478 (S.D.N.Y. 1971). Similarly, federal eligibility standards control in the AFDC program, once state participation has occurred. Carleson v. Remillard, 406 U.S. 598, 92 S. Ct. 1932, 32 L.Ed.2d 352 (1972); Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

Our Supremacy Clause inquiry thus resolves itself into a determination of whether applicable federal provisions concerning Medicaid eligibility—42 U.S. C. §§ 1396a(a)(10), 1396a(f)—permit the denial of medical assistance for which defendants contend.

Defendants' interpretation of the pertinent state and federal statutes is an hyperbole of literalism. Conceding that § 1396a(a)(10)(A) generally qualifies the present plaintiffs, as SSI beneficiaries, for Medicaid assistance, defendants insist that the limited exclusion from Medicaid coverage allowed by § 1396a(f) permits the state's exclusion here at issue. Beginning with the premise that under § 1396a(f), SSI recipients need not receive Medicaid benefits unless such recipients would have qualified for Medicaid under the January 1, 1972, state plan, defendants point to the Mississippi Medicaid Law, which on January 1, 1972, limited Medicaid recipients to those who could qualify for assistance under one or more of the four then existing categorical assistance programs, including Aid to the Permanently and Totally Disabled and Aid to Families with Dependent Children. The present plaintiffs, unquestionably, could not have qualified under the former disability program since it was limited to disabled individuals 18 years of age or older. It is equally true that plaintiffs could not *today* qualify for AFDC since 42 U. S.C. § 602(a)(24), adopted as an amendment to the AFDC program when SSI was enacted (See n. 3, supra), expressly prohibits SSI recipients from receiving AFDC payments. Defendants claim that therefore plaintiffs cannot *today* qualify for Medicaid under Mississippi's January 1, 1972, plan, and are no longer entitled to Medicaid benefits, solely by virtue of the § 1396a(f) exclusion. Stated simply, defendants argue that plaintiffs have lost Medicaid eligibility, not by any change in state law, but through congressional enactment.

[5–7] Our rejection of defendants' version of the effect of § 1396a(f) is grounded both on the manifest congressional purpose of the SSI program and on what seems to us to be an entirely reasonable reading of the literal terms of the applicable federal statutes.[4]

---

4. Although our holding is based on the effect of federal law, we note here that even the applicable state statute appears to command a result contrary to the defendants' position.

The congressional intent here pertinent is more easily understood when it is remembered that SSI abolished three of the former categorical assistance programs. In states such as Mississippi, where Medicaid eligibility was restricted to those persons participating in one or more of the categorical assistance programs, the SSI abolition would deprive many of their Medicaid benefits. To ensure that all who had been receiving Medicaid benefits prior to enactment of SSI would continue to receive them, Congress amended the Medicaid Act at 42 U.S.C. § 1396a(a)(10)(A) to expressly require all states to provide Medicaid assistance to all SSI beneficiaries.

But although this amendment solved one problem, it created another. As previously noted, the SSI program not only transferred welfare plans for the aged, blind and disabled from state to federal control but also expanded the welfare rolls by liberalizing income eligibility requirements, and for the first time including within the disability program disabled persons under the age of 18. Further, amended § 1396a(a)(10)(A), by tying Medicaid eligibility to SSI qualification, would have the radical effect of divesting the states of all control over the future size of their Medicaid obligations. It was thus apparent that if *all* SSI recipients were made eligible for Medicaid assistance, states such as Mississippi would have cast upon them the burden of providing Medicaid for large and uncontrolled numbers of newly eligible recipients—a financial burden for which many states did not bargain at the time they voluntarily entered into Medicaid participation. To avoid this imposition, which would have carried with it the danger of driving some states from Medicaid entirely, § 1396a(f) was attached to the Medicaid Act.[5] By limiting the states' obligation

We choose not to rely on our construction of the state statute because the point was never squarely addressed by the parties.

This controversy had its genesis in an opinion issued by the state's Attorney General advising the Mississippi State Department of Public Welfare that the Mississippi Medicaid Law—specifically Miss.Code Ann. § 43–13–115—would not permit Medicaid benefits to go to disabled children now receiving SSI payments. Throughout the progress of the lawsuit, all parties seem to have conceded that, unless federal law overrides, § 43–13–115 would bar the plaintiffs here from the relief sought.

It is first clear that this court, empowered to construe state as well as federal statutes, is not bound by the interpretation given the state statute by the Attorney General of Mississippi. In the absence of any state court decision on point, our task is rather to construe the statute as we believe the Supreme Court of Mississippi would construe it. See e. g., Trail Builders Supply Co. v. Reagan, 409 F.2d 1059 (5 Cir. 1969). Compare United States v. Tunica County School Dist., 323 F.Supp. 1019, 1028 (N.D.Miss. 1970), aff'd 440 F.2d 377 (1971).

A fair reading of § 43–13–115 reveals that the only relevant AFDC eligibility standards were those existing on October 10, 1969, the effective date of the Mississippi Medicaid Law. The phrase, "as the same existed in law", can only refer to the welfare program under which the Medicaid applicant seeks to qualify, and the time limitation contained in the statute must mean that later amendments, if any, to the AFDC program are not to be considered.

Since 42 U.S.C. § 602(a)(24) did not exist on October 10, 1969, having been added some three years later concurrently with passage of the SSI program, the plain terms of Mississippi's Act would not exclude AFDC eligible plaintiffs from medical assistance by reason of their subsequent entitlement to the greater SSI payments. This conclusion seems to be compelled by the very words of the Mississippi Medicaid Law.

5. "Under present law, States are required to cover under medicaid all people eligible for cash assistance payments. If this provision were carried over into the new assistance programs, many thousands of additional people, the great majority of whom would be people made newly eligible for assistance to the aged, blind, and disabled, would be required to be covered under medicaid. In view of the serious financial and other problems of many State medicaid programs, your committee decided not to require the States to cover the newly eligible but rather leave the decision up to each individual State. Your committee's bill would, therefore, provide that despite any other requirements of Title XIX, no State shall be required to provide medicaid coverage to any individual or family member in any month where such

to furnish Medicaid assistance to those individuals who would have been eligible for Medicaid on January 1, 1972, a date *prior* to the adoption of SSI, § 1396a(f) permitted the states to exclude from Medicaid coverage all persons made newly eligible for cash assistance by virtue of more liberal SSI program.[6]

The congressional aim is therefore plain: to permit the states to maintain their Medicaid obligations as if SSI had never been enacted, while simultaneously ensuring that all persons eligible for Medicaid benefits prior to SSI's enactment would continue to receive them. In other words, the Medicaid eligibility rolls were frozen unless a state might choose to liberalize its own eligibility standard. That Congress intended this result is further manifested by the second significant provision of § 1396a(f) that SSI income is not to be counted in determining Medicaid eligibility.

Even more specifically, it is evident that, in enacting SSI, Congress was acutely sensitive to the needs of disabled children, who had theretofore been excluded from coverage under the former disability plan. The House Report noted that:

" . . . disabled children who live in low-income households are certainly among the most disadvantaged of all Americans and that they are deserving of special assistance in order to help them become self-supporting members of our society. Making it possible for disabled children to get benefits under this program, if it is to their advantage, rather than under the programs for families with children, would be appropriate because their needs are often greater than those of non-disabled children. The bill, accordingly, would include disa-

bled children under the new program." H.R.Rep.No.92–231, supra, at 147–148.

This brief exegesis establishes beyond serious question that Congress did intend that disabled children under eighteen years of age who could have qualified for Medicaid had SSI not been adopted should continue to receive Medicaid assistance. It is equally clear that the congressional purpose was, emphatically, not to expand Medicaid benefits to *all* disabled children now qualifying for SSI, irrespective of their eligibility status under pre-SSI state law. Congressional concern for state fiscal problems permitted states to exclude from Medicaid those children who could not have qualified for Medicaid benefits as of January 1, 1972.

Those child-plaintiffs who do meet AFDC eligibility standards once their SSI payments are not considered are not among those made newly eligible for cash assistance by virtue of SSI; for in the absence of SSI, these children would qualify for Medicaid under Mississippi's 1972 plan. Their receipt of Medicaid assistance therefore does not swell Mississippi's Medicaid rolls in the way that § 1396a(f) was designed to prevent.

In view of these well-expressed congressional concerns, it would be anomalous to construe the applicable federal statutes so as to force plaintiffs to elect either to enjoy Medicaid assistance at the expense of obtaining the SSI payments for which they have dire need, or to participate in the SSI program with the sacrifice of medical assistance. We think this would indeed be a "Hobson's choice," a result which we are unwilling to impute to congressional intent. For, as Congress has recognized, disabled children generally have medical needs far more pressing than those possessed

---

person would not have been eligible for such assistance under the State plan in effect on January 1, 1971." H.R.Rep.No.92–231, 92d Cong., 1st Sess. (1971) at 147. The 1971 date was later changed to 1972 as a result of legislative delay on the bill.

6. "The SSI payment levels are higher than present payments in a number of states; in

order not to impose a substantial fiscal burden on these states, a provision was written into the Medicaid law allowing the State the option of either covering all SSI recipients or not covering the newly eligible SSI recipients who would not have met the State's January 1, 1972 standard for determining Medicaid eligibility." S.Rep., No. 93–553, 93rd Cong., 2d Sess. (1973) at 57.

by other children, in addition to sharing the requirements for subsistence which are common to all. Congress surely did not intend to play shell games with these *child assistance programs*. Rather, the aim was to enhance, not diminish benefits.

 Fortunately, we need not engage in any legerdemain to effectuate the evident purpose of Congress, for by the plain terms of the statute, as those words receive meaning from their legislative origins, plaintiffs are not deprived of Medicaid benefits by their receipt of SSI funds.[7]

We read the federal enactment as making *all* SSI recipients eligible for Medicaid benefits, save only those excluded by § 1396a(f). Under § 1396a(f), a state must still extend Medicaid coverage to an individual if, after disregarding SSI income, that state would be required to provide Medicaid assistance to that individual under the state's January 1, 1972, Medicaid plan. Under Mississippi's January 1, 1972, plan, any individual qualifying for AFDC benefits is also eligible for Medicaid assistance. In determining AFDC eligibility for the present plaintiffs, we believe that the § 1396a(f) prohibition against considering SSI income in determining Medicaid eligibility must be here applied, rather than the limitation of 42 U.S.C. § 602(a)(24), which prevents simultaneous receipt of SSI and AFDC funds. This emerges as the only logical construction to be accorded these two apparently conflicting provisions, since determination of AFDC eligibility here is *not* for the purpose of actual receipt of AFDC aid—the purpose for which § 602(a)(24) was enacted—but is only a *means* for determining Medicaid eligibility—the process to which § 1396a(f) speaks.

 With the prohibition of § 602(a)(24) inapplicable, and with § 1396a(f) barring any other consideration of SSI benefits in determination of Medicaid eligibility, it is plain that a basis does exist under the *literal terms* of the statute for concluding that all plaintiffs eligible for AFDC benefits and hence for Medicaid under the January 1, 1972, Mississippi plan are entitled to Medicaid assistance irrespective of their receipt of SSI funds. Since the legislative history also points to Medicaid inclusion for this plaintiff subclass, the interpretation by defendant of the state standard and their administrative application to this plaintiff subclass conflicts with the Act of Congress and if such an interpretation is compelled by Mississippi Medicaid Law, it would be invalid under the Supremacy Clause.

Scant discussion is needed with respect to the plaintiff subclass which consists of all SSI recipients under the age of 18. These plaintiffs, to the extent that they do not qualify for Medicaid under the state's January 1, 1972, plan, even after SSI payments are disregarded, are precisely those to whom the exclusion of § 1396a(f) is addressed. The only claim which this subclass can assert to Medicaid benefits arises from their newfound status as SSI beneficiaries. As putative additions to state Medicaid rolls, they may, under the explicit exclusion of § 1396a(f), be legally denied Medicaid assistance by the state without offense to the Act or the Supremacy Clause.

### IV.

Plaintiffs mount an additional constitutional attack in an effort to win declaratory relief for all SSI disability recipients under 18 years of age.[8] Plaintiffs assert that a denial of medical as-

---

7. In construing the terms of these federal welfare acts, we are particulary guided by the standard of liberal interpretation elucidated in Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); and Parks v. Harden, 504 F.2d 861 (5 Cir. 1974). Although

*Townsend, King,* and *Parks* dealt with AFDC and not Medicaid benefits, the statutory language of 42 U.S.C. § 602(a)(10), on which those courts relied, is legally indistinguishable from 42 U.S.C. § 1396a(a)(8), the parallel provision of the Medicaid Act.

8. Although plaintiffs complain of equal protection violations toward both subclasses of

sistance to children who are SSI disability beneficiaries involves two types of invidious discrimination anathematic to the Equal Protection Clause. First, it is claimed that otherwise eligible adult SSI disability recipients are Medicaid-eligible, while child SSI disability recipients are denied Medicaid solely on account of their age, thus resulting in arbitrary discrimination on the basis of age. Second, plaintiffs contend that otherwise eligible children now obtaining SSI aid to the blind may receive Medicaid assistance although children benefitting from SSI disability payments may not, thus yielding an irrational distinction between blind and disabled children.

It is worthy of note that the distinctions of which plaintiffs complain predate the SSI program and, at least in some states, have existed since enactment of the four former categorical assistance programs. SSI did not create these distinctions; it merely perpetuated them. It is also significant that the equal protection aspects of the welfare plan, albeit commanded by defendants' interpretation of state law, are nonetheless allowed by federal statute. If plaintiffs' equal protection claims warrant approval, then federal law too must fall, at least to the extent it acquiesces in unconstitutional state treatment.

■ Since plaintiffs' constitutional challenge implicates no "fundamental right" nor is founded on any "suspect criteria", as those terms have gained constitutional significance, our equal protection inquiry is governed by the traditional test of whether the legislative classifications here challenged are rationally related to the promotion of a legitimate state interest. U. S. Department of Agriculture v. Moreno, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); Dandridge v. Williams, 397 U. S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Under this standard of rationality, a legislative classification is to be upheld so long as any set of facts can reasonably be postulated to support it. Dandridge, supra, at 485, 90 S.Ct. 1153; McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961).

In the area of social and economic legislation generally, and more particularly in cases involving the allocation of welfare funds inadequate to meet fully the needs of all impoverished and disabled citizens, the Supreme Court has recognized that primary responsibility for making difficult value choices must rest with the legislative branch, which in turn must be permitted considerable latitude in devising programs and allocating the public fisc. Dandridge, supra; Jefferson, supra. See also Ward v. Winstead, 314 F.Supp. 1225, 1238 (N.D. Miss.1970). The rigorous judicial scrutiny of legislative enactments which is appropriate and practicable in some constitutional settings cannot, in an imperfect world, equitably be applied in this one. As the Court noted in Dandridge:

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S. Ct. 337, 340, 55 L.Ed. 369 [377]. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations —illogical, it may be, and unscientif-

child-plaintiffs, we have already found that the first subclass is entitled to injunctive relief under the Supremacy Clause. It is therefore unnecessary to consider that class here, and our equal protection remarks are

confined to the second child-subclass, which consists of those SSI recipients under the age of 18 who cannot qualify for AFDC aid and hence for Medicaid under the January 1, 1972, state plan.

ic.' Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730 [734]." 397 U.S. at 485, 90 S.Ct. at 1161, 25 L. Ed.2d at 501–02.

The Court went on to say:

"[T]he intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of this Court. The Constitution may impose certain procedural safeguards upon systems of welfare administration, Goldberg v. Kelly, 397 U.S. 254, 90 S. Ct. 1011, 25 L.Ed.2d 287. But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients." 397 U.S. at 487, 90 S.Ct. at 1163, 25 L.Ed.2d at 503.

Our constitutional assessment of this legislative structure, then, is keyed only to a search for rationality in its purpose and effect. Both the state plan and the federal imprimatur of it withstand such scrutiny.

First, in alleging that Medicaid benefits are denied to SSI disability recipients under the age of 18 solely on the basis of their age, plaintiffs are at least technically incorrect. Under the state plan, defendants now provide Medicaid assistance only to adult SSI beneficiaries who can meet the state Medicaid standards in effect on January 1, 1972.

■ Assuming, however, that age is the basis for distinction between the disabled who receive Medicaid and those who do not, several legally defensible justifications for that distinction may

be posited. As Congress and the Supreme Court have recognized, state welfare funds are finite. The total number of disabled persons within the state may far exceed the state's capacity to provide for each of them. Eliminating some disabled persons of tender years from the Medicaid rolls would be a rational means of stretching available funds. Disabled persons of this age are more likely to be under parental custody and care and thus in less need of medical assistance than disabled persons without family support. Too, medical needs of the young may well be less severe than those of persons of more advanced age. Given a limited welfare purse, and acknowledging that no state need participate in the Medicaid program except to the extent that it desires,[9] this statutory distinction is constitutionally defensible.

■ With respect to plaintiffs' equal protection claims based on differing treatment accorded to recipients of SSI and to the blind and SSI disability recipients, it is again the case that only those SSI blind beneficiaries who satisfy the state Medicaid standards in effect on January 1, 1972, may qualify for medical assistance.

Assuming that the assistance distinction is strictly drawn along blind-disabled lines, such a distinction nevertheless would be supported by legitimate state goals. Again considering the limited available state resources, the legislature could well conclude that the blind have more need for medical assistance than do the disabled. The legislature might also legitimately be influenced by numerical considerations, if it appeared that there were considerably more disabled children than blind children.

9. *Jefferson*, supra, 406 U.S. at 549–50, 92 S. Ct. 1724. Plaintiffs think it significant that Mississippi has, for the past several years, appropriated more money for the Medicaid program than has actually been spent. Plaintiffs argue that this surplus provides conclusive proof that inadequate funds are not a plausible reason for denial of Medicaid assistance to them. Regardless of any temporary surplus of state-appropriated Medicaid funds, we note that funds available for this purpose are limited, perhaps as much as in any state in the Union. This court is also without power to set priorities for state spending, or to write the state budget. These surplus moneys may be more needed elsewhere, and we cannot say that it would be irrational for state officials so to conclude.

The dearth of state legislative history does not allow us to point with any specificity to a particular motive or motives which engendered these statutory distinctions. It is constitutionally sufficient, though, that there exist sufficient bases upon which these distinctions could have been validly drawn. We conclude that plaintiffs' equal protection claims lack merit and must be denied.

Let an order be entered accordingly.