GRAY PANTHERS

v.

**ADMINISTRATOR, HEALTH CARE FINANCING ADMINISTRATION, DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., Appellants.**

No. 79–1334.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 15, 1980.

Decided July 29, 1980.

As Amended Sept. 3, 1980.

Edith S. Marshall, Atty., Dept. of Health and Human Services, Washington, D.C., with whom Robert P. Jaye, Deputy Asst. Gen. Counsel, Dept. of Health and Human Services, Washington, D.C., on brief, for appellants.

Gill DeFord, Los Angeles, Cal., a member of the bar of the Supreme Court of California, pro hac vice, by special leave of court, with whom Toby Edelman, Washington, D.C., was on brief, for appellee.

Before J. SKELLY WRIGHT, Chief Judge, MacKINNON, Circuit Judge, and MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals.

Opinion for the court filed by Chief Judge J. SKELLY WRIGHT.

J. SKELLY WRIGHT, Chief Judge:

This appeal is from a successful challenge to regulations of the Department of Health and Human Services [1] which implement the Medicaid program and which involve the financial eligibility criteria for institutionalized individuals and their spouses. Plaintiff-appellee is Gray Panthers, a voluntary organization dedicated to improving the treatment accorded our nation's elderly. The regulations in question permit, among other things, a certain amount of a spouse's funds to be "deemed" available for use by the institutionalized individual, whether or not such funds are in fact provided. Because "deeming" applies "an arbitrary formula, unrelated to the expenses of a particular couple's needs," the District Court held the practice to be forbidden by a statutory requirement that only income available in fact be taken into account for Medicaid eligibility purposes. It therefore vacated the regulations and remanded them to the Secretary for reconsideration. See Gray Panthers v. Secretary, Dep't of Health, Educ. & Welfare, 461 F.Supp. 319, 323 (D.D.C.1978). We agree with the result reached by the District Court but not for its as-

signed reasons. We believe the Secretary has failed to consider all the relevant factors in determining whether "deeming" is proper in this context. We therefore affirm the judgment of the District Court which vacated the regulations as invalid, but order the case remanded to the Secretary for reconsideration consistent with this opinion.

I

Medicaid is a cooperative federal-state program established pursuant to Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq. (1976). Regulations promulgated in accordance with the Act supplement the statutes in providing a framework within which the states must operate their Medicaid programs. A state is not required to establish a Medicaid program, but should it do so the program must conform to federal requirements. 42 U.S.C. § 1396a. A "State plan" must be submitted to and approved by the Secretary. 42 U.S.C. § 1396a(b). The state then becomes entitled to federal funds which partially reimburse expenditures made to provide specific types of medical assistance. Section 1902 of the Social Security Act, 42 U.S.C. § 1396a, provides the statutory guideline to which state medicaid eligibility criteria must conform:

(a) Contents

A State plan for medical assistance must—

\*    \*    \*    \*    \*    \*

(17) include reasonable standards \*  \* for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient \*  \*  \*, (C) provide for reasonable evaluation of any such income

---

* Sitting by designation pursuant to 28 U.S.C. § 293(a) (1976).

1. This action was filed before the redesignation of the Department of Health, Education, and Welfare as the Department of Health and Human Services. See 20 U.S.C.A. § 3508 (Supp. 1980).

or resources, and (D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child * * [.]

In addition to providing this general framework for Medicaid eligibility criteria, the statute places limits on the specific provisions that the states may adopt. States may choose to be governed by one of two rules in this regard. First, 42 U.S.C. § 1396a(a) provides that Medicaid assistance must be made available to all individuals who qualify for cash benefits under the Supplemental Security Income (SSI) program, Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. (1976). In these "SSI states" Medicaid eligibility is determined by statute in accordance with uniform federal standards.

States electing to be governed by the second rule, however, are not required to conform to the explicit SSI criteria. Pursuant to the "209(b) option,"[2] 42 U.S.C. § 1396a(f), any state may choose to establish more stringent eligibility criteria, so long as the criteria are no more restrictive than those in the state's "categorical assistance"[3] program that was validly in effect on January 1, 1972. Such programs were the precursors to the SSI program. They were enacted and administered by states in cooperation with the federal government, and their eligibility criteria varied from state to state. This case challenged only the HHS regulations permitting "deeming" in the 209(b) jurisdictions[4] whose eligibility criteria are not explicitly prescribed by federal statute.

A bit of history is necessary to understand the purpose behind the 209(b) option. Before the option was enacted, creating the SSI and 209(b) classifications, all jurisdictions were treated alike for purposes of establishing Medicaid eligibility criteria. Each state was required to provide Medicaid assistance to any individual who qualified for its categorical assistance program. When Congress brought most of these programs under federal administration through enactment of SSI, this principle of automatic eligibility was retained. But the federal SSI eligibility criteria allowed for broader coverage than that provided by many of the state plans. As a result, states would have been forced to expand their Medicaid programs involuntarily, and in some cases significantly. "[I]n order not to impose a substantial fiscal burden on these States," S.Rep.No. 93–553, 93d Cong., 1st Sess. 56 (1973), and to avoid the threat that some states would withdraw from the Medicaid program entirely rather than fund the expanded coverage, see West v. Cole, 390 F.Supp. 91, 98 (N.D.Miss.1975), Congress enacted the 209(b) option. Electing states could thus prevent extension of Medicaid coverage to any persons not then entitled to benefits.[5]

2. The option is so named because it was added by § 209(b) of the 1972 amendments to the Social Security Act, Pub.L.No. 92–603, 86 Stat. 1484.

3. The categorical assistance programs were established by various subchapters of the Social Security Act then in effect: Old-Age Assistance, Title I, 42 U.S.C. § 301 et seq.; Aid to Families with Dependent Children, Title IV, 42 U.S.C. § 601 et seq.; Aid to the Blind, Title X, 42 U.S.C. § 1201 et seq.; and Aid to the Permanently and Totally Disabled, Title XIV, 42 U.S.C. § 1351 et seq. Titles I, X, and XIV were subsequently repealed (except in Guam, Puerto Rico, and the Virgin Islands) by the 1972 amendments to the Social Security Act that established SSI, Pub.L.No. 92–603, § 303(a) & (b), 86 Stat. 1484 (effective Jan. 1, 1974). See discussion infra.

4. Fifteen states have exercised the 209(b) option: Connecticut, Hawaii, Illinois, Indiana, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, North Carolina, North Dakota, Ohio, Oklahoma, Utah, and Virginia. In addition, the same regulations apply to the island jurisdictions of Guam, Puerto Rico, and the Virgin Islands, to which the SSI program never applied. See note 2 supra.

5. This statement is qualified by the fact that 209(b) jurisdictions were required to enact "spend down" provisions, whose effect would be to extend Medicaid coverage to some persons not eligible on January 1, 1972. A "spend down" provision deducts funds spent toward medical care from those otherwise considered available for purposes of determining Medicaid eligibility.

"Deeming" is a procedure used in determining an applicant's financial eligibility for Medicaid. A certain amount of the noninstitutionalized individual's funds is conclusively presumed—is "deemed"—to be available for contribution toward the cost of his or her spouse's institutionalization. In SSI jurisdictions "deeming" is specifically required by statute. The statute provides that the income and resources of two cohabiting spouses are to be pooled for purposes of determining the financial eligibility of either. 42 U.S.C. § 1382(a)(2). In other words, income earned by one spouse is conclusively presumed to be earned jointly by the couple, and all such jointly earned income in excess of the statutorily prescribed maintenance level for the couple is considered to be available to either spouse. Where both spouses are otherwise eligible for Medicaid,[6] and one spouse is institutionalized, the pooling of funds continues for six months. The effect of this scheme is thus to "deem" a portion of the noninstitutionalized individual's income and resources to be available for support of his or her spouse. After six months of institutionalization only the income and resources of the institutionalized spouse are considered for determining eligibility, and the "deeming" ceases. 42 U.S.C. § 1382c(b). Where only one of the spouses is otherwise Medicaid-eligible, pooling of income must cease with the first month after institutionalization. 42 U.S.C. § 1382c(f).

By contrast, "deeming" in the 209(b) jurisdictions at issue in this case proceeds in a more direct manner, although actual practices vary considerably. Typically, the state specifies a "maintenance" level of income and resources for the noninstitutionalized spouse. Any funds in excess of this figure are conclusively presumed to be available for contribution toward the costs of institutionalization. In most states direct Medicaid payments to the institution are automatically reduced by this excess amount. Required medical care is thus usually withheld or terminated if the "deemed" amount is not in fact paid by the noninstitutionalized spouse.[7] The HHS regulations in question permit this "deeming" to occur in each state to the extent that it was the state's practice on January 1, 1972.

II

A

This court's review of the regulations in question must proceed within narrow bounds. The Medicaid statute provides that "available" income and resources shall be "as determined in accordance with standards prescribed by the Secretary[.]" 42 U.S.C. § 1396a(a)(17)(B). Where, as here, Congress has explicitly entrusted to the agency the primary task of defining statutory language, that definition is "entitled to more than mere deference or weight. It can be set aside only if the Secretary exceeded his statutory authority or if the regulation is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. §§ 706(2)(A), (C)." *Batterton v. Francis,* 432 U.S. 416, 426, 97 S.Ct. 2399, 2406, 53 L.Ed.2d 448 (1977). *See Herweg v. Ray,* 619 F.2d 1265 (8th Cir. 1980) (equally divided court sitting *en banc*) (opinion of McMillian, J.). Although this is a narrow standard, it does not relieve the court of its duty to conduct a searching inquiry. Even where no specific statutory requirements are being enforced, the court "must consider whether the decision was based on a consideration of the relevant factors * * *." *Citizens to Preserve*

6. That is, aged, blind, or disabled so as to qualify the applicant for relief under the SSI program. *See* 42 U.S.C. § 1381a.

7. Of the 209(b) states only Minnesota appears to be an exception: "The local welfare agency shall not withhold, delay or deny Medical Assistance because a responsible relative deemed able to contribute fails or refuses to accept financial responsibility." 12 Minn.Code of Agency Rules § 2.047 (Dep't of Public Welfare 47) C.5.b.(5). In *Brown v. Stanton,* 617 F.2d 1224 (7th Cir. 1980), the Seventh Circuit imposed a similar rule on the operation of the Indiana Medicaid program as a matter of statutory interpretation of § 1396a(a)(17). Because of our disposition in this case, we have no occasion to comment on the Seventh Circuit's holding in *Brown.*

*Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). *See Kollett v. Harris*, 619 F.2d 134, 140 (1st Cir. 1980). Because we conclude that the Secretary has not taken the relevant factors into account in promulgating the regulations at issue in this case, the District Court's judgment vacating those regulations must be upheld.

**B**

The Secretary argues primarily that no internally consistent interpretation of the Medicaid statute can prohibit "deeming" in 209(b) jurisdictions. In SSI jurisdictions "deeming" is required by statute for six months.[8] SSI jurisdictions, like 209(b) jurisdictions, are governed by the requirement of Section 1396a(a)(17) that only "available" income be considered in determining eligibility for benefits. Because "available" income incorporates "deeming" in SSI jurisdictions, the Secretary argues, the same term cannot be defined to prohibit the practice in 209(b) jurisdictions. "A concept of 'available income' which includes income 'deemed' in SSI states for a six month period *must also* encompass income 'deemed' to institutionalized spouses in the '209(b) states.'" Brief for appellants at 14 (emphasis in original).

We do not believe the statutorily required "deeming" in SSI states should be given such dispositive weight with respect to 209(b) jurisdictions. We perceive the governing principle in SSI states to be that the institutionalized individual is to be held solely responsible for his or her own medical care, with "deeming" a very narrow exception.[9] *See* 42 U.S.C. § 1382(a)(1). The six-month "deeming" period appears in the

statute as a limitation on the availability of cash payments under the SSI program. *See* 42 U.S.C. § 1382c(b). That limitation might well apply for Medicaid purposes in SSI jurisdictions, which have incorporated in full the SSI eligibility criteria. But it does not reflect a decision by Congress that "deeming"—for six months or for any period of time—is necessarily an appropriate practice in the 209(b) jurisdictions that are the subject of this case. More important, the legislative history shows that the six-month "deeming" provision was designed to serve the limited purpose of deterring fraud in the form of a voluntary separation of spouses in order to receive increased benefits. *See* H.R.Rep.No.92–231, 92d Cong., 2d Sess. 150 (1971). By its own terms, for example, Section 1382c(b) does not apply where only one of the spouses is otherwise eligible[10] for Medicaid. And there is no indication that its propriety was considered in the context of separations caused by institutionalization, where fraud is presumably not a concern. In any event, the relationship between Section 1396a(a)(17) and the statutory "deeming" in SSI states is not now before the court, and we intimate no opinion with respect to it. It is enough to say that there is no required federal statutory "deeming" in the 209(b) jurisdictions which are the subject of this case, and that there is no justification for extending the antifraud six-month limitation on the general policy beyond its statutory confines.[11]

The Secretary further argues that enactment of the 209(b) option, which permitted states to continue to use their 1972 Medicaid eligibility criteria, amounted to a specific congressional approval of those criteria. Because some states used "deeming"

---

8. *See* 183 F.2d at *supra.*

9. HHS itself recognizes that "only in highly limited situations does 'deeming' apply to physically separated relatives and then only when they can be said to be 'constructively' members of the same household[.]" *See* 42 Fed.Reg. 2685 (1977). Further, this six-month period applies *only* where the noninstitutionalized spouse is also Medicaid-eligible. This fact takes on significance in a different context. *See* discussion immediately following.

10. *See* text at note 5. *supra.*

11. The extension of the six-month "deeming" suggested by the government would be twofold: first in the application of the policy to 209(b) jurisdictions where it is not required by statute, and second in the sense that the HHS regulations permit the policy to be applied in 209(b) jurisdictions beyond the statutory six-month durational limit.

in 1972, the Secretary concludes, the practice was sanctioned by Congress and cannot now be prohibited by this court. Although this is certainly a plausible argument, there is nothing in the legislative history of Public Law No. 92–603, 86 Stat. 1484, to support it. The purpose of the 209(b) option was only to ensure that enactment of the SSI program, with its more generous eligibility criteria, would not automatically increase a state's Medicaid burden.[12] Congress was not expressing its view that "deeming," as then practiced in state Medicaid programs, was consistent with the requirements of the Medicaid statute. We thus agree with the Fifth Circuit's declaration that the 209(b) option cannot be read as an "all-purpose 'grandfathering' clause which effectively legitimizes any and every provision appearing in a state plan in 1972." *See Norman v. St. Clair*, 610 F.2d 1228, 1235 (5th Cir. 1980).

### C

We turn now to a discussion of the factors that are relevant to the Secretary's ultimate determination of whether and to what extent "deeming" should be permitted from an individual to his or her institutionalized spouse. The legislative history of the Medicaid statute explicitly addresses the question of when "deeming" is proper. It establishes a broad principle, or expectation, that "deeming" is appropriate between spouses and from parents to children: "The committee believes it is proper to expect spouses to support each other and parents to be held accountable for the support of their [Medicaid-eligible] children * * *." H.R.Rep.No. 213, 89th Cong., 1st Sess. 68 (1965); S.Rep.No. 404, 89th Cong., 1st Sess. 78 (1965). But with equal clarity the legislative history recognizes exceptions to the general rule, requiring individualized factual determinations of availability to be made:

> [Section 1396a(a)(17) is] designed so that the States will not assume the availability of income which may not, in fact, be available or overevaluate income and re-

sources which are available. Examples of income assumed include support orders from [*sic*] absent fathers, which have not been paid or contributions from relatives which are not in reality received by the needy individual. * * *

H.R.Rep.No. 213, *supra*, at 67. The question for the Secretary is how the policies underlying the general rule and its exceptions are to be applied to the diverse factual situations posed in this case.

At first blush the facts here presented appear to be embraced by the seemingly unequivocal expectation that spouses should support each other. But Congress has demonstrated that a much more flexible approach must be taken. Parents of Medicaid-eligible children, for example, are under a similarly unqualified expectation of support. And yet the legislative history specifically excludes from "deeming" support from *absent* fathers. The absence of the father from the home undercuts key assumptions that make "deeming" ordinarily reasonable, and thus the practice is forbidden. Likewise, the absence of a spouse from the home because of institutionalization differs significantly in two respects from the situation of cohabiting spouses which is at the heart of the congressional expectation of support.

First, the general rule of mutual support proceeds from the assumption that the spouses maintain a common household, "sharing" income and expenses, *see* 42 Fed. Reg. 2685, 2686 (1977), and constituting a single economic unit. But where institutionalization has caused one spouse to be absent from the home, two households, not one, in effect must be maintained. Expenses can no longer fairly be characterized as jointly incurred, and "deeming" no longer accurately reflects the economic norm. An important condition that makes "deeming" ordinarily reasonable between spouses is thus not met.

Second, and more important, the limited potential for disruption of the family was a determinative factor in permitting "deem-

---

**12.** *See* 182 F.2d at *supra*.

ing" between spouses and from parents to children. "Beyond such degree of relationship, however, requirements [of support] imposed are often destructive and harmful to the relationships among members of the family group." S.Rep.No. 404, *supra*, at 78, U.S.Code Cong. & Admin.News 1965, at 2018; H.R.Rep.No. 213, *supra*, at 68. The legislative history of Section 1396a(a)(17) recognizes that, especially in the context of the family structure, great care must be exercised to ensure that governmental regulation does not needlessly disrupt people's lives. In contrast with the ordinary situation of cohabiting spouses, institutionalized individuals and their husbands or wives are particularly vulnerable to the disruptive forces than can be exerted by governmental regulations. In most cases the individual's continued institutionalization depends upon his or her spouse's ability (or willingness) to pay the "deemed" amount.[13] The spouse is thus faced with the "choice" of reducing his or her standard of living to a point apparently set near the poverty line, or being responsible for the eviction of his or her spouse from the institution.[14] The institutionalized individual is often literally helpless to temper the harshness of this dilemma.

These two distinctions appear whenever one spouse has been institutionalized. Their importance depends upon the circumstances of each case. It is entirely possible, for example, that the Secretary would choose to treat spouses who were living apart before the institutionalization differently from spouses who were living together. Similarly, whether support payments were being made on a regular basis from one separated spouse to the other might itself prove to be a determinative factor. There are many factual differences with respect to which the propriety of "deeming" must be determined. These are problems for the Secretary to consider. Naturally, not every potential situation can be addressed by the Secretary's regulations. But the regulations must apply reasonably to the situations they do address, and must develop general principles applicable to different situations as they arise.

## D

Congress has stated that it is the primary responsibility of the Secretary, and not the courts, to determine whether and to what extent "deeming" is to be permitted from an individual to his or her institutionalized spouse. Such determination, however, must proceed within the framework established by the Medicaid statute. It is our duty to ensure that this occurs. The record in this case reflects that HHS regulations permit "deeming" in 209(b) jurisdictions because the Secretary thought that internal consistency within the Medicaid statute required such permission, and that Congress had specifically approved the practice. We disagree. To the contrary, in issuing regulations implementing the 209(b) option the Secretary is required to consider those policy concerns, outlined in part above, which Congress intended would guide her discretion in determining under what circumstances, and to what extent, "deeming" would be permitted.[15]

## III

The District Court's order vacating the subject regulations is affirmed. The case is

13. *See* text at note 6 *supra*.

14. One "alternative" to payment of the "deemed" amount is divorce. We do not consider this an acceptable option to mitigate the potential disruptive effect of "deeming" in this context.

15. Using an approach similar to that taken in this case, the First Circuit in *Kollett v. Harris*, 619 F.2d 134 (1st Cir. 1980), upheld HEW regulations under which SSI cash payments to disabled children are reduced by a "deemed" amount. The court recognized as applicable the *Overton Park* requirement that the regula-

tions be the product of a consideration of the relevant factors. This requirement was met in *Kollett* because the Secretary "gave sufficient attention to a wide range of issues including the general type of matters mentioned by the district court [to be relevant]." 619 F.2d at 141. We are confident that the "deeming" regulations challenged in this case would not pass a comparable test. Accordingly, we have no occasion to comment on the relatively forgiving interpretation of *Overton Park* employed in *Kollett*.

remanded to the District Court with direction to remand it to the Secretary for promulgation without delay of new regulations consistent with the Medicaid statute as interpreted in this opinion.

*So ordered.*

MacKINNON, Circuit Judge, concurring in part and dissenting in part.

In my view we should uphold the "deeming" practice involved in this appeal, and the basis of my disagreement with the majority's approach on this point is set forth below.

"Deeming" is the use of a formula to make a determination of the income available to support an institutionalized spouse, or, as defined by the district court, the "imputing of income on the basis of an arbitrary formula, without regard to the amount actually available to the institutionalized spouse . . ." *Gray Panthers v. Secretary, Department of Health, Education and Welfare,* 461 F.Supp. 319, 321 (D.D.C.1978). As with any formula the approach may result in hardship in cases where it imperfectly reflects the financial condition of the married couple involved. At the same time, "deeming" is a rational and necessary method of making a determination of available support and assessing financial responsibility in a program like Medicaid which involves hundreds of thousands of people, millions of dollars, *Herweg v. Ray,* 619 F.2d 1265, (8th Cir. 1980); *Norman v. St. Clair,* 610 F.2d 1228, 1242–3 (5th Cir. 1980), and allocates limited resources. *Dandridge v. Williams,* 397 U.S. 471, 478–79, 90 S.Ct. 1153, 1158, 25 L.Ed.2d 491 (1969). *See also Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

My disagreement with the majority opinion centers upon its failure to accord unequivocal approval to "deeming" as pre-

scribed in the regulations of the agency. While the majority opinion approves the "deeming" regulations conceptually, they are nevertheless remanded to the Secretary for reconsideration in light of a series of ambiguous factors delineated in the majority's opinion. Majority Op. at 184–185. This court should resolve this case as it is presented; a remand is not necessary for the resolution of the issues involved in this appeal.

I

The majority should recognize that the scope of our review is severely circumscribed. The Secretary's regulations should be set aside only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 706(2)(A), (C). *See Batterton v. Francis,* 432 U.S. 416, 426, 97 S.Ct. 2399, 2406, 53 L.Ed.2d 448 (1977). The majority opinion acknowledges that both "SSI States" and "209(b) States" [1] are governed by the same requirement, i. e., that only "available" income be considered in determining eligibility for Medicaid benefits. However, in the SSI States, income is deemed by statute to accrue to an institutionalized spouse for a period of six months. 42 U.S.C. § 1382c(b). The Secretary identifies this provision as authority for "deeming" in 209(b) States. The majority deals with this proposal by stating that

"[i]t is enough to say that there is no required federal statutory 'deeming' in the 209(b) jurisdictions which are the subject of this case, and that there is no justification for extending the anti-fraud six-month limitation on the general policy beyond its statutory confines."

Majority Op. at 184 (footnote omitted).

One additional factor is useful in identifying the extreme nature of the Gray Pan-

---

1.  States participating in the Medicaid program fall into two categories: those which determine eligibility under the Supplemental Security Income program ("SSI") Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* (1976) and those states which have elected a more restrictive eligibility criteria, an option autho-

rized by Section 209(b) of the 1972 Amendments to the Social Security Act, Pub.L.No.92–603, 86 Stat. 1484 codified at 42 U.S.C. § 1396a(f). In shorthand fashion, the states exercising this option are referred to as "209(b) States" and the others as "SSI States."

ther's attack. At oral argument the following colloquy occurred:

> Judge MacKinnon: "They're not going back; they're staying with them [the standards in effect in 1972].

> \*     \*     \*     \*     \*     \*

> Mr. DeFord [counsel for the Gray Panthers]: "Well, my only point is whatever the standards in 1972, if they were impermissible at that time a state should not be allowed to go back to them."

> Judge MacKinnon: "What are you talking about, go back to them?"

> Mr. DeFord: "Well, a state should not be able to maintain them, then. If they were impermissible in 1972 under the statute as set out in 1965, then the states should not be able to use the 209(b) option to maintain any invalid attribution of income."

> Judge MacKinnon: "Well, then your point is they're all invalid. The deeming is all invalid."

> Mr. DeFord: "That's correct your Honor  .   .   .".

Later, the court and counsel turned to the question of what effect invalidating the deeming regulations would have administratively:

> Judge MacKinnon: "Go through determination, you mean go to hearing?

> Mr. DeFord: "The normal welfare procedure, your Honor, by which a state determines what the income and expenses of the individual are. It is a fairly common procedure."

> Judge Wright: "You mean, there would have to be a fact hearing in every case?"

> Mr. DeFord: "I'm not talking about a hearing, your Honor. I'm simply talking about the state welfare officials sitting down with the non-institutionalized spouse figuring out what the expenses and income of that individual are."

These colloquies illustrate several important points. First, Gray Panthers is attacking the *concept* of "deeming", not just its application to Medicaid programs in the 209(b) States. Second, Gray Panthers would substitute an individual hearing in every case for "deeming." The extreme nature of these arguments also provides a basis for their rebuttal. The purpose of "deeming" is not only to mitigate fraud, a ubiquitous and monstrously costly problem in the administration of any assistance program, but also to facilitate the administration of the program itself, thereby reducing the percentage of resources devoted to the administration of programs, and increasing the percentage which can be actually distributed to program beneficiaries. *See Brown v. Stanton*, 617 F.2d 1224 at 1230 (January 30, 1980) (Pell, J., concurring in part, and dissenting in part). While counsel for Gray Panthers did not advocate a full dress adversary hearing but an individualized, in-person determination of expenses and income for each couple affected by this program, the fact remains that such a proposal is a limited hearing, albeit termed an informal one and would involve practically all the detriments of a hearing. In administering Social Security benefits, Congress has often elected to use "simple criteria". The Supreme Court has observed that "[g]eneral rules are essential if a fund of this magnitude is to be administered with a modicum of efficiency, even though such rules inevitably produce seemingly arbitrary consequences in some individual cases. *Weinberger v. Salfi*, 422 U.S. 749, 776 [95 S.Ct. 2457, 2472, 45 L.Ed.2d 522, 1975]." *Califano v. Jobst*, 434 U.S. 47, 53, 98 S.Ct. 95, 99, 54 L.Ed.2d 228 (1977). Nothing in the statute suggests that Congress intended to deny the states recourse to similar efficiencies. Nothing in the statute suggests that Congress intended to burden participating states with the layers of administrative structure.

The approach taken by the majority falls well short of that advocated by the Gray Panthers. But the soft direction provided by the court will not provide meaningful guidance for the Secretary to reevaluate her regulations. Indeed, the groundwork has already been laid for a second appeal to measure compliance by the Secretary against the somewhat indefinite benchmarks provided by the majority. We could

avoid this recurring review without distorting the statutory scheme by affirming the Secretary's regulations.

## II

The only villain here is the level of need which has not been adjusted to reflect skyrocketing costs of living. However well-intentioned, the court cannot through a remand to the Secretary affect the inflationary pressures which are particularly burdensome to people on fixed incomes. In a concise concurrence in *Kollett v. Harris*, 619 F.2d 134 (1st Cir. 1980), upholding "deeming" from a parent to a disabled child in determining the amount of cash assistance payments under a Supplemental Security Income program, 42 U.S.C. 1381 *et seq.*, Judge Aldrich aptly addressed the issue of "deeming":

> As one who participated in *Boucher v. Minter*, D.Mass., 1972, 349 F.Supp. 1240, from which plaintiffs would derive much support, I feel I should recite that I am entirely comfortable with its present rejection. The enormous enterprise which social insurance has become would fall of its own weight if practical, rule of thumb guidelines could not be established to avoid piece by piece scrutiny of every case. The Supreme Court having forcefully recognized that this is permissible even though occasional hardship is inevitable, *Weinberger v. Salfi*, 1975, 422 U.S. 749 [95 S.Ct. 2457, 45 L.Ed.2d 522] the principle applies that there must be some reason in fact, or logic, before the agency's judgmental expertise is overruled. On the point here in issue the agency's experience is obviously considerable. I cannot think that it abused its discretion in choosing this rule rather than some other.

*Id.* at 146–147.

## III

Because in my opinion there is nothing to suggest that the Secretary's action in promulgating the regulations allowing the use of "deeming" in 209(b) States is arbitrary or capricious, the limit of our scope of review, I respectfully dissent from that part of the court's opinion which holds to the contrary.