471 F.2d 690
 Consuelo LOPEZ, Individually and on behalf of all other
persons similarly situated, Plaintiff-Appellant,
v.
Raymond W. VOWELL, Commissioner of Public Welfare, State of
Texas, Individually and in his official capacity,
Defendant-Appellee.
 No. 72-1643.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 9, 1973.
Certiorari Denied April 16, 1973.
See 93 S.Ct. 1903.
 
 J. L. Covington, Brownsville, Tex., Nancy Duff Levy, New York City, for plaintiff-appellant.
 Crawford C. Martin, Atty. Gen. of Texas, Jack Sparks, Asst. Atty. Gen., Carolyn Busch, Austin, Tex., for defendant-appellee.
 Before COLEMAN, AINSWORTH and DYER, Circuit Judges.
 DYER, Circuit Judge:
 
 
 1
 This class action involves the right of indigent non-parent caretaker relatives in the State of Texas to receive public aid benefits under the state-administered, but federally assisted, program of Aid to Families with Dependent Children (AFDC). Mrs. Lopez is a caretaker relative who would be entitled to AFDC benefits except for the fact that Secs. 3411[1] and 3454[2] of the Financial Services Handbook of the Texas State Department of Public Welfare deny aid to caretakers of needy dependent children if the caretakers are married and are living with their spouses. Mrs. Lopez complains that Secs. 3411 and 3454[3] are inconsistent with Sec. 406 of the Social Security Act, 42 U.S.C.A. Sec. 606,[4] and are therefore violative of the Supremacy Clause of the Constitution; alternatively, she alleges that the challenged regulations violate the Equal Protection Clause of the Fourteenth Amendment. On a motion to dismiss for a failure to state a claim, the district court held as a matter of law that a State, with its broad discretion in defining need, has the power to determine unilaterally that all married caretaker relatives who live with their spouses are not needy and are therefore not entitled to receive AFDC assistance. We reverse.
 
 
 
 * * *
 
 
 
 2
 * * *
 
 
 
 * * *
 Prior to January 1971, Mrs. Lopez and her husband were residing in San Benito, Texas, with their son, Eleno, and their daughter, Carmen, together with their second daughter, Margarita, and her three minor children. Having been abandoned by the children's father, Margarita's family was receiving a monthly AFDC payment of $119. This amount was computed by first analyzing Margarita's total family needs according to certain minimum standards of need which the Texas State Department of Public Welfare had determined represent the cost of basic requisites essential for health and decency-in this instance $159.[5] This figure included the needs of Margarita, the caretaker relative, as well as the needs of the three dependent children, since Margarita was needy and did not live with her spouse. As a means of limiting Texas' welfare expenditures, the State applies a percentage factor of 75% to the family's total needs to arrive at their recognizable needs. Non-exempt family income, which here was zero, is then deducted from this figure to determine the amount of the family's AFDC grant.[6]
 The other members of the Lopez family (the two grandparents, Eleno, and Carmen) were not receiving AFDC assistance. They were supported by Mr. Lopez's weekly salary of approximately $35, out of which he paid for the personal needs of himself, Mrs. Lopez, Eleno, and Carmen, as well as for their pro rata share of the rent and utilities. Although Mr. Lopez's salary was not sufficient to cover the minimum recognizable needs of his family ($152 v. $154), the members of the Lopez family were not eligible under Sec. 406 of the Social Security Act for an AFDC grant because both parents were present in the home. See note 4 supra.
 On November 29, 1970, Margarita died, leaving her three minor children in the care of their grandparents. On January 1, 1971, the AFDC grant was reduced from $119 to $56 because of the death of the caretaker relative.[7] Thereafter, Mrs. Lopez requested that she be substituted on the grant for her deceased daughter as the caretaker relative of the children. Mrs. Lopez did not request that either her husband or her two children be made part of the grant, as she conceded that there was no basis for their eligibility. Although Mrs. Lopez was needy and was within the category of relatives eligible to be a caretaker, her request was denied pursuant to Secs. 3411 and 3454 of the Texas Financial Services Handbook because she was living with her spouse and because she was neither incapacitated nor a recipient of another category of public assistance.
 In November 1971, after the Appeals Hearing Officer of the Texas State Department of Public Welfare had sustained the denial of her request, Mrs. Lopez filed this suit, challenging the validity of the regulations. The district court dismissed her complaint in January 1972. Believing that the regulations in question "are directly related to the state's determination of need," the district court concluded that "Secs. 3411 and 3454 . . . are reasonable, [and] do not contravene the provisions of the Social Security Act. . . ." We disagree. The plain language, legislative history, and purposes of the Act make clear that so long as one is needy and qualifies as a caretaker relative within the meaning of Sec. 406, 42 U.S.C.A. Sec. 606, no further restriction on eligibility for assistance is permissible.
 Although a State, in the interest of preserving the fiscal integrity of its welfare program by economically allocating limited resources, has the "undisputed power to set the level of benefits,"[8] the Supreme Court in Townsend v. Swank, 1971, 404 U.S. 282, 291, 92 S.Ct. 502, 508, 30 L.Ed.2d 448, held that "AFDC resources may not be protected by the device of adopting eligibility requirements restricting the class . . . made eligible by federal standards. . . ." Thus, while a State may establish criteria for measuring need (e. g., Texas' budgetary standards) and may limit its welfare expenditures by setting the level of benefits (e. g., Texas' percentage factor at 75%), the class of persons eligible for assistance must be determined by reference to federal standards. See Jefferson v. Hackney, 1972, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285.
 The challenged regulations are precisely the type of blanket exclusion from eligibility condemned by Townsend. Section 406(b) (1) defines "aid to families with dependent children" as payments to meet the needs of both the dependent children and the caretaker relative with whom the children reside. Nowhere does the statute indicate that the caretaker must be a single individual in order for his or her needs to be included in calculating the amount of the AFDC grant. For a family to be eligible for AFDC assistance, the needy children, in addition to living with certain specified relatives, must have been "deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent." 42 U.S.C.A. Sec. 606(a) (emphasis supplied). It is the absence of a parent which is critical to AFDC eligibility, not the absence of a relative or the spouse of a relative. In fact, in defining a "dependent child" as one who resides with "one or more" of the specified relatives, Sec. 406(a) explicitly recognizes that a child might be living with a married relative. Similarly, Sec. 406(c) defines a "relative with whom any dependent child is living" as "one of the relatives specified in subsection (a) of this section and with whom such child is living . . . in a place of residence maintained by such individual (himself or together with any one or more of the other relatives so specified) as his (or their) own home." 42 U.S.C.A. Sec. 606(c) (emphasis supplied). Thus, although money payments are generally available only to meet the needs of one of the relatives with whom the child is living, 42 U.S.C.A. Sec. 606(b) (1), the presence of other relatives in the home, including the spouse of the caretaker relative, was clearly foreseen. Indeed, the Act not only contemplates the presence of the caretaker's spouse, but specifies that in certain situations the spouse is also to receive aid, 42 U.S.C.A. Sec. 606(b) (1). This particularization is cogent evidence that Congress did not authorize the States to limit eligibility to unmarried caretakers. Cf. Townsend v. Swank, supra, 404 U.S. at 287, 92 S.Ct. 502. If the spouse of a caretaker, as well as the caretaker, is in some situations eligible to receive aid, certainly the mere presence of the spouse cannot disqualify the caretaker for assistance.
 In sum, we conclude that Secs. 3411 and 3454 of the Texas Financial Services Handbook are clearly in conflict with 42 U.S.C.A. Sec. 606 and must, therefore, give way to the federal standards for AFDC eligibility. Because we find the regulations to be inconsistent with the Social Security Act, resolution of Mrs. Lopez's Equal Protection claim is unnecessary.
 The judgment of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion.
 Reversed and remanded.
 
 
 [1]
 In pertinent part, Sec. 3411 provides:
 Caretaker (AFDC)
 (4) Must be a single relative (either a legal parent or another single relative) within the specified degree of relationship. However, no caretaker will be certified (and only the needs of the children) may be budgeted if the relatives are a married couple and each spouse is present, unless incapacity or receipt of categorical assistance is involved.
 
 
 [2]
 In pertinent part, Sec. 3454 provides:
 Special Regulations Regarding Children Placed in Home of Relative
 In those situations where the child(ren) live with relatives, within the specified degree of relationship (i. e., a legally married couple) other than parents (e. g., grandfather and grandmother, uncle and aunt, etc.), neither relative may be designated as a caretaker and only the needs of the eligible children may be included in the assistance grant unless (a) one of the relatives is determined to be incapacitated by the Medical Review Team and is otherwise eligible (the Medical Review is to determine ability to support spouse and not for purpose of determining deprivation) or (b) the relative's spouse is a recipient of categorical assistance.
 
 
 [3]
 The Texas Financial Services Handbook was revised in November 1972. Although a few minor word changes were made to both sections, neither section was modified substantively. The revised Sec. 3454, however, now appears as Sec. 3453
 
 
 [4]
 In pertinent part, Sec. 406 provides:
 (a) The term "dependent child" means any needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home and (2) who is (A) under the age of eighteen, or (B) under the age of twenty-one and (as determined by the State in accordance with standards prescribed by the Secretary) a student regularly attending a school, college, or university, or regularly attending a course of vocational or technical training designed to fit him for gainful employment;
 (b) The term "aid to families with dependent children" means money payments with respect to, or . . . medical care in behalf of or any type of remedial care recognized under State law in behalf of, a dependent child or dependent children, and includes (1) money payments or medical care or any type of remedial care recognized under State law to meet the needs of the relative with whom any dependent child is living (and the spouse of such relative if living with him and if such relative is the child's parent and the child is a dependent child by reason of the physical or mental incapacity of a parent or is a dependent child under section 407) . . .;
 (c) The term "relative with whom any dependent child is living" means the individual who is one of the relatives specified in subsection (a) of this section and with whom such child is living (within the meaning of such subsection) in a place of residence maintained by such individual (himself or together with any one or more of the other relatives so specified) as his (or their) own home.
 42 U.S.C.A. Sec. 606 (emphasis supplied).
 
 
 [5]
 In Texas the budgetary "standards of need" are as follows:
 PERSONAL NEEDS
Adult Caretaker $65 per month
Child (each) $25 per month
SHELTER (private)
Family of 2 $33 per month
Family of 3-4 $44 per month
Family of 5 or more $50 per month
UTILITIES $13 per month
 
 
 [6]
 The budgetary process was applied to Margarita's family as follows:
 Margaritapersonal needs $65.00
Three childrenpersonal needs 75.00
Pro rata share of shelter needs 12.52
Pro rata share of utilities 6.52
Family's total needs $159.04
Family's recognizable needs (75% of Total Needs) $119.28
Less non-exempt income 0.00
Deficit of AFDC Grant (rounded off) $119.00
 While we accept the accuracy of these figures, taken from appellant's brief, we note that the $12.52 allocated for the shelter needs of Margarita and her three children does not comply with the Texas budgetary standards for a family of four. See note 5 supra. Indeed, the allocated amount is not even equivalent to 1/2 of the budgeted shelter needs for a family of eight. See note 5 supra.
 
 
 [7]
 The needs of the family were computed as follows:
 Personal needs of 3 children $75
Shelter needs 0
Utilities 0
Total needs $75
Recognizable needs $56
AFDC Grant $56
 For some unexplained reason, the grandfather was now for the first time assumed to be supplying all of the grandchildren's shelter and utilities. Thus, the children lost not only that portion of their grant attributable to the personal, shelter, and utilities needs of their mother, but they also lost that part of their grant attributable to their own shelter and utilities needs.
 
 
 [8]
 King v. Smith, 1968, 392 U.S. 309, 334, 88 S.Ct. 2128, 2142, 20 L.Ed.2d 1118; see Dandridge v. Williams, 1970, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491