Nonnie Mae NORMAN et al.,
Plaintiffs-Appellants,

v.

Fred ST. CLAIR et al.,
Defendants-Appellees.

Nonnie Mae NORMAN, et al.,
Plaintiffs-Appellees,

v.

Fred ST. CLAIR et al.,

and

Patricia Roberts Harris, Secretary of
Health and Human Resources,
Defendants-Appellants.

Nellie WILLIAMS et al., Plaintiffs-Cross
Appellees.

Minnie Merli, and all others similarly situated in her class, Plaintiff-Appellant,
Cross-Appellee,

v.

Fred ST. CLAIR et al.,

and

Patricia Roberts Harris, Secretary of
Health and Human Resources, Defendants-Appellees, Cross-Appellants.

Nos. 77-1722, 79-2471.

United States Court of Appeals,
Fifth Circuit.

Jan. 28, 1980.

Thomas E. Childs, Jr., Asst. Atty. Gen., State of Mississippi, Jackson, Miss., J. G. Dedeaux, Gen. Counsel, State Dept. of Public Welfare, Jackson, Miss., for defendants-appellees in No. 77–1722.

Alvin N. Jaffe, Asst. Reg. Atty., Dept. of HEW, Atlanta, Ga., for defendants-appellees in No. 77–1722 and defendants-appellants in No. 79–2471.

Robert E. Kopp, Dept. of Justice, Civ. Div., App. Section, Washington, D. C., for Secretary of HEW.

Jim R. Bruce, Sp. Asst. Atty. Gen., Robert E. Hauberg, U. S. Atty., L. A. Smith, III, Asst. U. S. Atty., Jackson, Miss., W. R. Phillips, Staff Atty., MS Medicare Comm., Jackson, Miss., for defendants-appellants.

Alice Mattice, App. Section, Dept. of Justice, Washington, D. C., for Secretary of HEW and defendants-appellants.

Before COLEMAN, Chief Judge, and RONEY and FAY, Circuit Judges.

COLEMAN, Chief Judge.

This case and its companion, *Williams v. St. Clair*,[1] require an exploration of the complexities of Medicaid regulations, state and federal. Here, we examine Mississippi's "deeming" procedures. In *Williams* we consider "spend-down" regulations. We uphold the use of deeming as against both statutory and constitutional attack.

In these class actions the plaintiffs[2] challenge the Mississippi state practice of deeming the income of one spouse to be available

Dennis L. Horn, Central Miss. Legal Serv., Hazlehurst, Miss., Gill Deford, Nat'l Senior Citizens Law Center, Los Angeles, Cal., for plaintiffs-appellants.

[1]. *Norman v. St. Clair*, No. 77–1722, was brought in the Southern District of Mississippi, and *Williams v. St. Clair*, 610 F.2d 1244, No. 78–1625, was filed in the Northern District of Mississippi. They were subsequently consolidated in the Southern District and the District Court issued one judgment covering both cases. The appeal from the consolidated decision is No. 79–2471. For convenience, in our opinion in *Norman* we treat all the deeming issues raised in both cases, and in *Williams* we dispose of the spend-down questions. This corresponds to the posture of the original briefing in both cases.

[2]. Because plaintiffs and defendants both attack portions of the district court opinion, to avoid confusion we shall refer to the parties according to their stance in the lower court.

for the support of the other spouse in (1) the calculation of Medicaid eligibility and in (2) the determination of the amount of the Medicaid payment.[3] The cases present a double attack on the deeming policy: (1) where the spouses are living together and (2) where one spouse is institutionalized and the other lives at home. Additionally, plaintiffs challenged the state practice of including one spouse's Old Age, Survivors and Disability Insurance (OASDI) benefits in calculating the other spouse's eligibility for Medicaid. Finally, they challenged state treatment of deductions for dependent children in Medicaid calculations.

Plaintiffs sought a preliminary injunction. After an evidentiary hearing, the District Court denied the preliminary injunction and an appeal was taken to this Court. We granted an injunction pending appeal. Class certification was denied in No. 77–1722 and granted in 610 F.2d 1244, No. 78–1625.[4]

The issue was submitted on the merits in a stipulated record before a magistrate. The magistrate found the state's deeming process to be contrary to the medicaid statute. The District Court adopted the magistrate's order as the judgment of the district court. Upon a motion by defendants for alteration and amendment, the District Court allowed a form of deeming if the spouses live together. This appeal followed. The appeals from the denial of the preliminary injunction and from the decision on the merits were consolidated. We decide them together.

## I. Background

### A. The Operation of the Medicaid Program

In an effort to make medical services for the needy more generally available, Congress in 1965 established a federal program, denominated "Medicaid". This program was designed to liberalize the federal law under which states operate their medical assistance programs. H.Rep. No. 213, 89th Cong., 1st Sess. (1965); S.Rep. No. 404, 89th Cong., 1st Sess. (1965), reprinted in [1965] U.S.Code Cong. & Admin.News, pp. 1943, 2014.

Under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.,* state medical assistance plans which meet certain general standards are eligible for federal assistance under what is essentially a matching funds formula. The state becomes entitled to grants of federal funds in reimbursement for a portion of the expenditures made in providing specific types of medical assistance to eligible individuals under the plan, where done in accordance with federal requirements. The Medicaid program is funded through the Department of Health, Education and Welfare but individual states receive wide discretion in the administration of their local programs. Although a number of federal legal and policy provisions affect state action under the program, the state has the responsibility for, *inter alia,* establishing the level of reimbursement for providers of services and determining the scope of services to be offered under the particular state's program. Participating states must, however, provide five general categories of medical services

---

**3.** Defendants are the Commissioner of the Mississippi State Department of Public Welfare, the Secretary of the Department of Health, Education, and Welfare, the Director of the Mississippi Medicaid Commission, the members of the State Board of the Mississippi State Department of Public Welfare, and the members of the Mississippi Medicaid Commission.

**4.** The relevant classes were defined as follows: (1) all married persons in the State of Mississippi (a) who are separated from their spouses, (b) who are receiving no support from their spouses, whose spouses are over 65 years of age, blind, or permanently and totally physically or mentally disabled, and (c) who would be

eligible for Medicaid assistance except for the income or resources of their spouses; (2) all married persons in the State of Mississippi (a) who live with their spouses, (b) who are receiving some support from their spouses, (c) who are over 65 years of age, blind, or permanently and totally physically or mentally disabled, and (d) who would be eligible for Medicaid assistance except for the income of their spouses; (3) all married persons in the State of Mississippi (a) whose spouses are over 65 years of age, blind or permanently and totally physically or mentally disabled and (b) who received Social Security benefits pursuant to the OASDI program.

to individuals classified as "*categorically needy*": (1) inpatient hospital services; (2) outpatient hospital services; (3) other laboratory and X–ray services; (4) skilled nursing facilities, screening and treatment for persons under the age of 21, and family planning services and supplies; and (5) physicians services.[5]

States are not required to participate in the Medicaid program but if they choose to do so they must submit to the Secretary of Health, Education and Welfare a state plan which meets all requirements of the Act. The state plan describes the nature and scope of the state program and provides assurances that the state will administer that program in conformity with the requirements of the federal guidelines. 42 U.S.C. § 1396a(b). *Beal v. Doe,* 432 U.S. 438, 441, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977); *Preterm, Inc. v. Dukakis,* 1 Cir. 1979, 591 F.2d 121, 124, *cert. denied sub nom. Preterm, Inc. v. King,* 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1057 (1979); *White v. Beal,* 3 Cir. 1977, 555 F.2d 1146, 1149.

In 1969 Mississippi elected to participate in the Medicaid program and its state plan subsequently received HEW approval. The state plan is under the general supervision of the Mississippi Medicaid Commission and is administered by the Mississippi Department of Public Welfare. Miss.Code Ann. § 43–13–101 *et seq.*

Under the federal program as it was originally established in 1965, participating states were required to provide medical assistance to those individuals receiving aid from the four general categorical assistance welfare programs, Aid to the Aged (Title I), Aid to the Blind (Title X), Aid to the Disabled (Title XIV), and Aid to Families with Dependent Children (Title IV). 42 U.S.C. § 1396a(a)(10)(A); 42 C.F.R. 435.4. These

programs were themselves joint federal-state efforts, administered by the states. Additionally, the Medicaid provisions allowed states to include individuals whose incomes exceeded the *categorical* assistance levels but whose resources were not sufficient to meet the costs of necessary medical and remedial care and services. These individuals are referred to as "*medically needy*". 42 U.S.C. § 1396a(a)(10)(A), (C); 42 C.F.R. § 435.301; *Preterm, Inc. v. Dukakis,* 1 Cir. 1979, 591 F.2d 121, 124, *cert. denied sub nom. Preterm, Inc. v. King,* 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1057 (1979). *See also Friedman v. Berger,* 2 Cir. 1976, 547 F.2d 724, 726, *cert. denied,* 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977). However, Mississippi chose not to have a *medically needy* program and that is not involved in this litigation.

In 1972 Congress revamped the categorical assistance programs, replacing federal-state aid to the aged, blind, and disabled with a fully federal scheme, known as the Supplemental Security Income Program (SSI), Title XVI, 42 U.S.C. § 1381 *et seq. See* Pub.L. No. 92–603 (1972). The states retained responsibility for administering the program of aid to families with dependent children. In many states, Mississippi included, the federalizing of the categorical assistance welfare grant programs would make more people eligible for assistance than had been eligible under the state-administered scheme. Therefore, to avoid overwhelming the states with an immense increase in Medicaid rolls, Congress allowed the states the option of including only those individuals *who met the eligibility requirements for the state-administered programs on January 1, 1972,* rather than determining Medicaid eligibility according to the standards of the new SSI program. Pub.L. No. 92–603 § 209(b); 42 U.S.C. § 1396a(f); 42 C.F.R. § 435.1(d); *Hayes v. Stanton,* 7 Cir.

---

**5.** *See, e. g., Preterm, Inc. v. Dukakis,* 1 Cir. 1979, 591 F.2d 121, 124–25, *cert. denied sub nom. Preterm, Inc. v. King,* 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1057 (1979); *Roe v. Norton,* 2 Cir. 1975, 522 F.2d 928, 932–33; *Johnson's Professional Nursing Home v. Weinberger,* 5 Cir. 1974, 490 F.2d 841, 842–43; *Arizona State Dep't of Public Welfare v. Depart-*

*ment of Health, Education & Welfare,* 9 Cir. 1971, 449 F.2d 456, 460–61, *cert. denied,* 405 U.S. 919, 92 S.Ct. 945, 30 L.Ed.2d 789 (1972); *Connecticut State Department of Public Welfare v. Department of Health, Education & Welfare,* 2 Cir. 1971, 448 F.2d 209, 211; *Opelika Nursing Home, Inc. v. Richardson,* 5 Cir. 1971, 448 F.2d 658, 660–61.

1975, 512 F.2d 133, 136–38. States which opted for the more restrictive 1972 standards are referred to as "209(b) states." [6] Mississippi is a "209(b)" state. Miss.Code Ann. § 43–13–115.

At the same time, Congress did not intend that those SSI recipients who did not meet their state's 1972 financial standards should be absolutely precluded from participation in the Medicaid program. It therefore required that states which employ the January 1, 1972, eligibility standards shall incorporate a *"spend-down"* provision. This allows those individuals who would be eligible under the SSI standards to deduct their incurred medical expenses from their income. This spend-down would enable needy individuals to become eligible for Medicaid when that part of their incomes in excess of the 1972 eligibility standards is consumed by expenses for medical needs. Pub.L. No. 92–603 § 209(b); 42 U.S.C. § 1396a(f); H.Rep. No. 92–231, 92d Cong., 1st Sess. (1971), reprinted in [1972] U.S. Code Cong. & Admin.News pp. 4989, 5061; *Hayes v. Stanton, supra.*

### B. *Mississippi's Program*

At the time these cases arose, employing its January 1, 1972, standards, Mississippi calculated Medicaid decisions on Form DPW–368 (revised 8–1–76).[7] The state's procedure used deeming, which is the assumption that a portion of one spouse's income is available for the support of the other, at two stages of the calculations: First, in determining Medicaid eligibility; Second, in determining "Medicaid income", which is the amount the recipient must himself pay for medical expenses. When each spouse is technically eligible in his own right and both request Medicaid, their incomes are considered mutually available

and medical expenses are mutually attributable to either or both. A spouse who is technically eligible may not wish to apply. If so, the income of the spouse declining to apply is considered available to the applying spouse in the same manner as that of an ineligible spouse. *See* Mississippi Department of Welfare Manual, Vol. III, § M, p. 9645 (1–1–78) [hereinafter cited as Welfare Manual].

We now outline the procedure for computing the income for a technically eligible applicant with an ineligible spouse.

To determine eligibility, the state computes the "net *monthly* income" of the spouse by adding net wages [gross wages, less social security withholdings, taxes, and work expenses] to that spouse's other forms of income [e. g., social security benefits]. From this net income a uniform deduction ($78) is subtracted for the needs of the ineligible spouse. Additional deductions for minor dependent children are then subtracted. The allowances are $65 per child, less any income the child actually receives (e. g., social security or insurance benefits). The subtraction of these deductions from the net monthly income produces the amount of income which is deemed available to the other spouse (the Medicaid applicant). The deemed amount is then added to the applicant's monthly cash income, from which a small disregard ($7.50) is subtracted. If the total is less than $150 where the applicant lives at home, or $450 where the applicant is institutionalized, the applicant qualifies for Medicaid.[8] If it is greater than these respective amounts, the applicant is not immediately eligible for Medicaid unless he is able to take advantage of the state spend-down procedure. *See* Welfare Manual, Vol. III, § M, pp. 9645–9649b, 9658–9660.

---

**6.** Pub.L. No. 92–603 § 209(b) added § 1902(f) to the Social Security Act, 42 U.S.C. § 1396a(f).

**7.** Because of the injunction pending appeal and the decision on the merits, Mississippi now uses procedures different from those in effect when these suits were filed. With the exception of certain minor changes in income levels and deduction amounts, however, the state seeks to continue the procedure in effect before

the court orders in these cases. The state's regulations are found in Volume III of the Mississippi Department of Welfare Manual, Policies and Procedures for Administration of Public Assistance.

**8.** The income level is now $175 where the applicant lives at home. The disregard amount has been increased to $10. *See* Form DPW–368 (revised 7–1–79).

Once eligibility is established, the state then turns to determining how much of the medical expense an institutionalized recipient must bear himself. This is done by adding the recipient's net monthly income (income minus the $7.50 disregard) to the net monthly income of the spouse. From this total net income of recipient and spouse, a small allowance for the recipient's personal incidentals and clothing ($34.00) is subtracted. An additional allowance for the needs of the ineligible spouse ($140)[9] is then deducted, yielding net income after needs of the spouse are met. From this is subtracted allowances for minor dependent children ($65 minus income of the dependent child). This produces a figure, known as "Medicaid income," which the recipient must pay for medical services. Whenever the net income of the *ineligible* spouse exceeds the $140 allowance, the excess is, in effect, deemed available to the Medicaid recipient for purposes of paying medical expenses.

## C. *Facts*

At the time of the suit, 79-year-old Troy Norman was institutionalized in a skilled nursing home in Mississippi. According to affidavit testimony, Mr. Norman's health was such that he could not receive the proper nursing care from his wife at home. He received a monthly Social Security disability check for $160.50. He had no other source of income and was eligible for Medicaid.

Troy Norman's wife, Nonnie Mae, lived in the community with their 14-year-old son Thomas. According to the findings of the magistrate, Mrs. Norman had a monthly employment income of $298.26 (excluding taxes, social security, and employment-related expenses) and received monthly social security checks for $47.90. Their son Thomas also received a social security check of $47.90. Mrs. Norman was not eligible for Medicaid. Application of the state's calculation of Medicaid eligibility and Medicaid income yields the following:

9. This amount is now $175. See Form DPW–368 (revised 7–1–79).

| | |
|---|---:|
| Net monthly income of ineligible spouse | $346.16 |
| Less standard allowance for spouse's needs | 78.00 |
| Less allowance for minor child ($65.00–$47.90) | 268.16 |
| | 17.10 |
| Deemed Income | $251.06 |

The deemed income from Mrs. Norman is added to Mr. Norman's income (minus the $7.50 disregard) producing a total income available to Mr. Norman of $404.06. Since this is less than $450, Mr. Norman is eligible for Medicaid.

To determine how much of his medical expenses Mr. Norman must pay himself, the state calculates as follows:

| | |
|---|---:|
| Net monthly income of Mr. Norman | $153.00 |
| Net monthly income of Mrs. Norman | 346.16 |
| Total net monthly income of both | 499.16 |
| Less allowance for Mr. Norman | – 34.00 |
| | 465.16 |
| Less allowance for Mrs. Norman | 140.00 |
| | 325.16 |
| Less allowance for unmet needs of Thomas ($65.00–47.90) | – 17.10 |
| Equals "Medicaid Income" to be paid by Normans to nursing home | $308.06 |

The state's allowance of $140.00 for Mrs. Norman's living expenses is a uniform amount which does not vary.

As these figures suggest, $189.06 of Mrs. Norman's income *is deemed* available to Mr. Norman to be used in paying his nursing home medical expenses. *Plaintiffs contend that $189.06 is not in fact available to Mr. Norman and to deem it so violates the Medicaid statute, 42 U.S.C. § 1396a(a)(17).*

In testimony before the magistrate Mrs. Norman stated her monthly expenses as follows:[10] mobile home payment, $79.85; electricity, $80; butane gas, $65; car payments, $56.18; tire payments, $27; car insurance, $32; food, $129; clothing, $10; gasoline, $25; Thomas' tuition at a local private academy, $67; Thomas' bus ride to school, $20. Mrs. Norman testified that she also had to pay approximately $16 a month

10. Although Mrs. Norman's testimony on expenses was uncontradicted, the magistrate, in his denial of a preliminary injunction, said he felt the expenses "seem out of line".

for her husband's medicine, which Medicaid did not pay for. She stated that she was able to pay her recent expenses only because she received an income tax refund of $491 and that she had gotten behind on several of her accounts. Since these expenses exceed her income, she contends, no income should be deemed available to her husband. Plaintiffs further assert that deeming the income available when it in fact is not would result in Mr. Norman's being unable to pay his nursing home bill, forcing him to leave the nursing home. Plaintiffs argue also that by subtracting Thomas' social security check from the $65 dependent child allowance the state is deeming Thomas' income available to his father, thereby forcing Thomas to support his father in violation of 42 U.S.C. § 1396a(a)(17)(D).

Nellie and Robert Williams are a couple who both live at home. Mrs. Williams, who is over 65, is potentially eligible for Medicaid. Her husband is not. According to findings of the magistrate, Mrs. Williams receives $40 in Supplemental Security Income (SSI) benefits per month. Her husband receives $266 per month in OASDI benefits and retirement funds. The calculations thus run as follows:

| | |
|---|---:|
| Total monthly income of Mr. Williams | $266.00 |
| Less standard deduction for living expenses of ineligible spouse | − 78.00 |
| Equals amount "deemed" available to Mrs. Williams | $188.00 |
| Plus monthly income of Mrs. Williams ($40–$7.50 disregard) | 32.50 |
| Equals total income of Mrs. Williams | $220.50 |

Because $188 of Mr. Williams' income is deemed available to Mrs. Williams, she is ineligible for Medicaid. In arriving at this figure, the state uses a uniform allowance of $78.00 for the living expenses of the spouse. The amount of this deduction never varies.

Wharey S. Wilson and his wife Jane are both potentially eligible for Medicaid. Mr. Wilson resides in a nursing home, while Mrs. Wilson lives at home. Under the

state's policy, the joint incomes of the Wilsons are pooled for purposes of determining Mr. Wilson's Medicaid eligibility as a nursing home patient. As a result of Social Security and Veterans Administration cost-of-living increases, the Wilson's joint income exceeded the eligibility cut-off by $48.65, making them both ineligible because of the deeming of each spouse's income to the other.[11] They challenge this policy.

Finally, plaintiffs attacked Mississippi's practice of considering one spouse's OASDI benefits available to the other. Jane Wilson's $164.30 in OASDI benefits is pooled with the income of her husband in determining their Medicaid eligibility. Likewise Wharey Wilson's $107.90 is pooled with the income of Mrs. Wilson. Part of Mr. Williams' $206.40 in OASDI income is deemed available to Nellie Williams for Medicaid purposes. Plaintiffs contend this deeming of OASDI benefits constitutes an illegal garnishment under 42 U.S.C. § 407.

## II. *Deeming*

Plaintiffs contend that Mississippi's deeming procedures and HEW's guidelines permitting such procedures violate the text, legislative history, and general intent of the Medicaid statute. They argue that the statute requires states to consider only such income as the spouse, in effect, *physically gives the applicant.*

We begin with a preliminary inquiry into implications of the § 209(b) exception. We then proceed to a close analysis of the Medicaid eligibility statute. Since we find that the statute permits Mississippi's practice, we also reach the constitutional issue.

### A. *The § 209(b) Exception*

Mississippi employs the more restrictive eligibility guidelines permitted by § 209(b) of Pub.L. No. 92–603, 42 U.S.C. 1396a(f), the relevant portion of which reads as follows:

> Notwithstanding any other provision of this subchapter, . . . no State not eligible to participate in the State plan

11. At the time of the district court decision, the Wilsons were apparently eligible. The issue

then was deeming for the purpose of determining the amount of Medicaid payments.

program established under subchapter XVI of this chapter [the SSI program] shall be required to provide medical assistance to any aged, blind, or disabled individual . . . unless such State would be (or would have been) required to provide medical assistance to such individual . . . had its plan for medical assistance approved under this subchapter and in effect on January 1, 1972, been in effect [at the time of assistance], except that for this purpose any such individual shall be deemed eligible for medical assistance under such State plan if (in addition to meeting such other requirements as are or may be imposed under the State plan) the income of any such individual as determined in accordance with section 1396b(f) of this title (after deducting any supplemental security income payment made with respect to such individual, and incurred expenses for medical care as recognized under State law) is not in excess of the standard for medical assistance established under the State plan as in effect on January 1, 1972. Mississippi contends that this exception precludes the court from interpreting other sections of the Medicaid act to require the state to extend coverage broader than that existing in 1972.

Although § 209(b) allows states to use standards more restrictive than those under the SSI program, the provision can not be viewed as an all-purpose "grandfathering" clause which effectively legitimizes any and every provision appearing in a state plan in 1972. We find no indication that in passing § 209(b) Congress intended to authorize otherwise improper procedures. In other words, if, in January, 1972, the state's deeming procedure was impermissible under 42 U.S.C. § 1396a(a)(17), it cannot now be made acceptable simply because of § 209(b).

This necessitates an examination of whether the state's practice violates the Medicaid eligibility statute, 42 U.S.C. § 1396a(a)(17), and its implementing regulations.

## B. Statutory Analysis

■ The statutory requirements for state eligibility standards are found at 42 U.S.C. § 1396a(a)(17) and in the implementing regulations, 42 C.F.R. part 435.[12] Because of

12. At the time these suits were filed, HEW regulations, 45 C.F.R. 248.3 required that a state plan must "provide that only such income and resources as are actually available will be considered." This was revised and recodified in April 1977 at 42 C.F.R. 448.3(b)(1) to read that a state plan must "[p]rovide that only such income and resources as are considered available under this section may be considered as an applicant's or recipient's income in determining eligibility or the amount of assistance and that income and resources will be reasonably evaluated." This change in effect imposed different requirements in different jurisdictions because of the states' option to use pre-SSI eligibility standards. See *Gray Panthers v. Secretary, Dep't of HEW*, 461 F.Supp. 319 (D.D.C. 1978). A subsequent recodification of the Medicaid regulations has deleted this subsection entirely. The financial eligibility guidelines for states using more restrictive requirements than SSI are now found at 42 C.F.R. §§ 435.731–435.740. For our purposes the relevant section is 42 C.F.R. § 435.734, which reads as follows:

In determining medicaid eligibility of an aged, blind, or disabled individual under requirements more restrictive than those used under SSI, the agency must consider the income and resources of spouses and parents as available to the individual in the manner specified in §§ 435.723 and 435.724 or in a more extensive manner, but not more extensive than the requirements in effect under the medicaid plan on January 1, 1972.

§ 435.723 states:

(a) If the agency provides medicaid to SSI recipients, it must meet the requirements of this section in determining eligibility of aged, blind, and disabled individuals under the optional coverage provisions of §§ 435.210, 435.211, and 435.231.

(b) The agency must consider income and resources of spouses living in the same household as available to each other, whether or not they are actually contributed.

(c) If both spouses apply or are eligible as aged, blind, or disabled and cease to live together, the agency must consider their income and resources as available to each other for the first 6 months after the month they cease to live together. After this 6-month period, the agency must consider only the income and resources that are actually contributed by one spouse to the other.

(d) If only one spouse in a couple applies or is eligible and they cease to live together, the agency must consider only the income and resources of the eligible spouse that are

its critical importance we set out the statute in full.

A State plan for medical assistance must . . . include reasonable standards (which shall be comparable for all groups and may, in accordance with standards prescribed by the Secretary, differ with respect to income levels, but only in the case of applicants or recipients of assistance under the plan who are not receiving aid or assistance under any plan of the State approved under subchapter I, X, XIV, or XVI, or part A of subchapter IV of this chapter, and with respect to whom supplemental security income benefits are not being paid under subchapter XVI of this chapter based on the variations between shelter costs in urban areas and in rural areas) for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and (in the case of any applicant or recipient who would, except for income and resources, be eligible for aid or assistance in the form of money payments under any plan of the State approved under subchapter I, X, XIV, or XVI, or part A of subchapter IV, or to have paid with respect to him supplemental security income benefits under subchapter XVI of this chapter as would not be disregarded (or set aside for future needs) in determining his eligibility for such aid, assistance or benefits, (C) provide for reasonable evaluation of any such income or resources, and (D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under age 21 or (with respect to States eligible to participate in the State pro-

gram established under subchapter XVI of this chapter), is blind or permanently and totally disabled, or is blind or disabled as defined in section 1382c of this title (with respect to States which are not eligible to participate in such program); and provide for flexibility in the application of such standards with respect to income by taking into account, except to the extent prescribed by the Secretary, the costs (whether in the form of insurance premiums or otherwise) incurred for medical care or for any other type of remedial care recognized under State law . . . . .

The 89th Congress established the Medicaid program as ancillary to a broader, more comprehensive health care scheme, commonly known as Medicare.

From the very language of the statute, Congress clearly intended that insofar as Medicaid eligibility is concerned one spouse must assume responsibility for the other in providing medical care. The specific language of the act allowed states to "take into account the financial responsibility" of the Medicaid applicant's or recipient's spouse. 42 U.S.C. § 1396a(a)(17)(D). Moreover, Congress made it clear that states could not extend this responsibility beyond the spouse to children or other relatives. Both the House Ways and Means Committee and the Senate Finance Committee in their reports on H.R. 6675 expressed their views in similar language:

The committee has heard of hardships on certain individuals by requiring them to provide support and to pay for the medical care needed by relatives. The committee believes it is proper to expect spouses to support each other and parents to be held accountable for the support of their minor children and their blind or permanently and totally disabled children even though 21 years of age or older. Such requirements for support may reasonably include the payment by such relative, if able, for medical care. Beyond

actually contributed to the eligible spouse after the month in which they cease to live together.

§ 435.724 deals with the financial responsibility of parents for blind or disabled children and is not relevant to the discussion here.

such degree of relationship, however, requirements imposed are often destructive and harmful to the relationships among members of the family group. Thus, States may not include in their plans provisions for requiring contributions from relatives other than a spouse or the parent of a minor child or children over 21 who are blind or permanently and totally disabled. Any contributions actually made by relatives or friends, or from other sources, will be taken into account by the State in determining whether the individual applying for medical assistance is, in fact, in need of such assistance.

S.Rep. No. 404, 89th Cong., 1st Sess. (1965), reprinted in [1965] U.S.Code Cong. & Admin.News, pp. 1943, 2018, H.Rep. No. 213, 89th Cong., 1st Sess. 68 (1965).

In providing for limited accountability Congress was responding to a spate of state laws under Kerr-Mills which had denied coverage to individuals whose relatives had sufficient income to support the Medicaid applicant or whose state relative responsibility laws required such support. In particular Congress was acting to remove those state tests which had looked to the ability of children to support their elderly parents. *See, e. g.,* 111 Cong.Record 15813, 16149 (1965).

Under the plain language of the statute, the states were left to establish and prosecute the responsibility of spouses as a matter of their own discretion. While they might prefer to do this through available statutory and judicial techniques of forcing one spouse to assume the financial needs of the other, in the context of the Medicaid program they are just as free to do so by regulation.

Plaintiffs contend that permitting states to use deeming as a method of taking into account the financial responsibility of the spouse violates the requirement of 42 U.S.C. § 1396a(a)(17)(B) that states include only that income which, in the words of the Senate report, is "actually available." Yet, it is just this juxtaposition with the deeming of one spouse's income which the drafters of the legislation themselves recognized

and approved. Thus Senator Long, who headed the Senate's Conference delegation, summarized the conference provisions as follows: "No income can be imputed to an individual unless actually available; and the financial responsibility of an individual for an applicant may be taken into account only if the applicant is the individual's spouse. . . ." 111 Cong.Rec. 18349 (July 27, 1965). This indicates that Congress intended that income deemed from a spouse to be a part of the "available" income which the state may consider in determining eligibility.

Such an interpretation is necessary as well to provide meaning to subsection (17)(D). If Congress had not considered the deeming of income permissible, there would have been no need for that subsection. Any payments the Medicaid applicant received by virtue of the state's enforcing a relative responsibility law would have been automatically included in income, while the failure of the state to enforce the relative responsibility law would have meant that the applicant would have received no income. Subsection (17)(D) thus envisions a different situation, one where the state has decided to hold one spouse financially responsible for the other but has not done so by judicial enforcement of a financial responsibility law (which would have produced income under subsection (17)(B), thereby rendering (17)(D) superfluous).

We must reject plaintiffs' contention that 42 U.S.C. § 1396a(a)(17)(D) merely authorizes the states to invoke formal financial responsibility proceedings for the support of spouses. We hold instead that 42 U.S.C. § 1396a(a)(17)(D) permits states to deem income from one spouse available to the other and that such deemed income is part of the "available" income which states may compute under 42 U.S.C. § 1396a(a)(17)(B).

In addition to the legislative history of this particular section, our decision finds support in other facets of the Social Security Act and in a common-sense approach to federal health assistance. First, we note that the federal Supplemental Security Income (SSI) program explicitly recognizes

the propriety of deeming in determining eligibility for SSI benefits. *See* 42 U.S.C. § 1382(a)(2); 42 U.S.C. § 1382c(f)(1).[13] This is particularly important in light of the 1974 amendment to the Medicaid act which permitted states either to adopt SSI standards for Medicaid eligibility or, in the § 209(b) exception, to use the stricter standards which were in effect in 1972. Thus under certain circumstances Medicaid eligibility determinations in an "SSI state" must, because of the statutory mandate in the SSI legislation, take into account income that is deemed available, without regard to whether that income is actually contributed. Since this statutory mandate exists concurrently in the Medicaid law with the provision of 42 U.S.C. § 1396a(a)(17) directing that only income which is "available" be taken into account, it must be concluded that the income deemed to Medicaid applicants pursuant to provisions of law applicable to SSI states is available income. A concept of available income which includes income deemed to spouses in SSI states must also encompass income deemed to spouses in the more restrictive programs of the § 209(b) states.

Second, the use of deeming also comports with a reasonable approach to welfare programs. Without some form of deeming, spouses could shift all the income to one spouse, who might then either refuse to aid the other or incur exorbitant and unnecessary expenses, thus preventing aid to the eligible spouse. Indeed, the unemployed spouses of wealthy individuals could become prime candidates for Medicaid assistance. Such a result is bound to have been far from the intent of the Medicaid drafters. Yet it would be the ultimate consequence of the approach plaintiffs urge upon us. Although we are considering a program enmeshed in a maze of overlapping statutes and regulations, we cannot assume that Congress intended to abandon all reason or restraint.

The Supreme Court's decisions invalidating deeming under the Aid to Families with Dependent Children (AFDC) program do not control the cases before us. The narrow holdings of the Court in those cases cannot support the broader prohibition against deeming in assistance programs which plaintiffs urge upon us. In *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), the Court considered the validity of Alabama's "substitute father" regulation which denied AFDC payments to the children of a mother who cohabited in or outside her home with an able-bodied man. Under the Alabama plan, it was irrelevant whether the man had any legal obligation to support the children and whether he had in fact contributed to their support; the state, in effect, deemed the man's resources available for the support of the children. The Supreme Court rejected the Alabama deeming approach, but it did so not on the basis of deeming but on the limited grounds of statutory definition. The Court held the Alabama regulation invalid because it defined "parent" in a manner inconsistent with the AFDC sections of the Social Security Act. Only individuals with a legal obligation to support the child came within the statutory definition.

A similar approach guided the Court in *Lewis v. Martin*, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970), when it rejected a California AFDC law requiring consideration of the income of a stepfather or of an adult male assuming the role of a spouse to the mother although not legally married to her. The California law conclusively presumed that the needs of the children were reduced by the income of the man in the house, whether that income was in fact used to meet the children's needs. Again focusing upon the definition of parent, the court held that the Social Security Act precludes treating a person who is not a natu-

---

**13.** 42 U.S.C. § 1382c(f)(1) provides:

(f)(1) For purposes of determining eligibility for and the amount of benefits for any individual who is married and whose spouse is living with him in the same household but is not an eligible spouse, *such individual's income and resources shall be deemed to include any income and resources of such spouse, whether or not available to such individual,* except to the extent determined by the Secretary to be inequitable under the circumstances (emphasis added).

ral or adoptive parent as a "'breadwinner' unless the bread is actually set on the table." *Lewis v. Martin,* 397 U.S. at 559, 90 S.Ct. at 1286.

In the final opinion of its trilogy involving AFDC deeming plans, *Van Lare v. Hurley,* 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975), the Court considered a New York regulation reducing pro rata the shelter allowance provided AFDC recipients to the extent there are nonpaying lodgers living in the household. The state procedure made the presence of the lodger a basis for assuming the availability of income. In rejecting New York's regulation, the court stated that *King* and *Lewis* "construe[d] the federal law and regulations as barring the States from assuming that nonlegally responsible persons will apply their resources to aid the welfare child." 421 U.S. at 347, 95 S.Ct. at 1747. The court thus continued to reject deeming of income from people whom Congress had not included in the definition of "parent".

In all three cases, upon which plaintiffs place considerable emphasis, the Court never addressed the propriety of deeming itself. In each case, the Court rejected an aspect of deeming because the state had improperly defined parent under the AFDC statute, an issue wholly absent here. Thus, contrary to plaintiffs' contention, the Supreme Court has not rejected the principle of deeming in the area of social services. Indeed in *Lewis v. Martin, supra,* the Court implicitly assumed that certain deeming techniques are acceptable.[14]

Our own decisions involving deeming have likewise been limited and do not reach to the cases now before us. In *Reyna v. Vowell,* 5 Cir. 1972, 470 F.2d 494, a review of a lower court dismissal order, we examined a Texas AFDC practice which presumed the availability to the entire family of income earned by a child between the age of 18 and 21 who lives in the family's household. Noting the Supreme Court's decisions in *King* and *Lewis* and the general policy against premature dismissal, especially where serious questions of public law may be presented, we remanded for an evidentiary hearing to enable plaintiff to establish facts to support his complaint. We did not engage in a full-scale inquiry into the propriety of deeming.

*Houston Welfare Rights Organization, Inc. v. Vowell,* 5 Cir. 1977, 555 F.2d 1219, *reversed on jurisdictional grounds sub nom. Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), also involved a challenge to state regulations under the AFDC program. There we considered a Texas policy of budgeting only a pro rata share of shelter and utility expenses when a non-AFDC recipient shares a recipient's residence. Plaintiffs charged that the proration policy violated the federal guidelines by presuming that the ineligible individual living with the recipient contributes toward the shelter and utility expenses, thus reducing the need of the recipient. Unable to find a meaningful distinction between the statutory scheme struck down in *Van Lare, supra,* and the Texas policy, we concluded that *Van Lare* controls and found the proration procedure improper.

Thus in both *Reyna* and *Houston Welfare Rights Organization,* we based no holding on the validity of deeming per se. Our decisions rested upon specific statutory construction of AFDC and, of course, did not extend to an analysis of Medicaid programs.[15]

---

**14.** The Court appears to sanction deeming in the following passage:

We only add that HEW might reasonably conclude that only he who is as near as a real or adoptive father would be has that consensual relation to the family which makes it reliably certain that his income is actually available for support of the children in the household. HEW may, in other words, reasonably conclude that an obligation to sup-

port under state law must be of "general applicability" to make that obligation in reality a solid assumption on which estimates of funds actually available to children on a regular basis may be calculated. 397 U.S. at 558–59, 90 S.Ct. at 1285.

**15.** *Lopez v. Vowell,* 5 Cir. 1973, 471 F.2d 690, *cert. denied,* 411 U.S. 939, 93 S.Ct. 1903, 36 L.Ed.2d 401 (1973), and *Rodriguez v. Vowell,* 5 Cir. 1973, 472 F.2d 622, *cert. denied,* 412 U.S.

In upholding deeming, we are aware that the district courts which have confronted this issue have all rejected some form of Medicaid deeming.[16] Nevertheless, no appeals court has yet addressed the issue. For the reasons outlined above, we find the reasoning in these district court opinions unpersuasive. We decline to adopt their rationale.

We thus hold that deeming the income of one spouse available for the support of the other, both where the spouses live together and where one spouse is institutionalized,[17] is permissible under the Medicaid statute.

## C. Flexibility

■ In holding as we have, we do not lose sight of the statute's strong emphasis upon flexibility in determining eligibility. We recall the legislative history which emphasizes an effort to avoid *arbitrary* and *rigid* income standards in calculating eligibility. *See, e. g.,* 111 Cong.Rec. 18349 (July 27, 1965) (statement of Sen. Long presenting summary of Conference Report on H.R. 6675). We note, also the statute's requirement that the evaluation of income and resources be reasonable. 42 U.S.C. § 1396a(a)(17)(C).

The enactment of Medicaid was an effort to replace the then-existing Kerr-Mills medical assistance program for the aged with an expanded and more effective form of federally assisted state aid to needy individuals who required medical care. Under the optional and limited Kerr-Mills plan, state aid programs had covered only the aged, and many states had imposed rigid and complex eligibility standards. *See, e. g.,* S.Rep. No. 404, 89th Cong., 1st Sess. (1965), reprinted in [1965] U.S.Code Cong. & Admin.News pp. 1943, 2014, 2018; 111 Cong.Rec. 15804 (July 7, 1965) (statement of Sen. Ribicoff).

House and Senate advocates of health care for the nation's needy pushed a bill which would expand the Kerr-Mills coverage and make the eligibility requirements more flexible while at the same time leaving to states substantial discretion in operating their programs and establishing eligibility tests. The result, new Title XIX of the Social Security Act, extended medical assistance coverage to those individuals re-

944, 93 S.Ct. 2777, 37 L.Ed.2d 404 (1973), were also challenges to eligibility practices under the AFDC program. *Lopez* involved the right of indigent non-parent caretaker relatives to receive AFDC benefits. A Texas law denied aid to caretakers of needy dependent children if the caretakers were married and were living with their spouses. Examining the statutory basis for AFDC aid, we held the regulation invalid because inconsistent with the Social Security Act. We found within the federal act a purpose to aid both the dependent children and the caretaker relative, without any indication that the caretaker must be single in order for his needs to be included in calculating AFDC aid.

*Rodriguez* likewise concerned aid to caretaker relatives of dependent children. Because of the congressional purpose to assist dependent children by also meeting the needs of their caretaker relatives, we rejected a Texas regulation which denied AFDC grants to families in which the child has income "in his own right" that is greater than his own state-defined recognizable needs, even though such income is less than the recognizable needs of both the child and his caretaker relative.

Although both cases involved welfare program eligibility, neither addressed deeming specifically and both were limited to strict statutory construction of the federal AFDC program.

**16.** *See, e. g., Nursing Home Residents' Advisory Council v. Kelly,* 470 F.Supp. 747 (D.Minn. 1979); *Hanke v. Nyhus,* 470 F.Supp. 742 (D.Minn.1979); *Gray Panthers v. Secretary, Department of Health, Education and Welfare,* 461 F.Supp. 319 (D.D.C.1978); *Herweg v. Ray,* 443 F.Supp. 1315 (S.D.Iowa 1978); *Manfredi v. Maher,* 435 F.Supp. 1106 (D.Conn.1977); *Burns v. Vowell,* 424 F.Supp. 1135 (S.D.Tex.1976); *Franssen v. Juras,* 406 F.Supp. 1375 (D.Ore. 1975).

**17.** Although HEW regulations prohibit deeming under SSI programs where eligible spouses have not lived together for six months, 42 C.F.R. § 435.723(c), or, in the case where only one spouse is eligible, as soon as they cease to live together, 42 C.F.R. § 435.723(d), 42 C.F.R. § 435.734 allows non-SSI states to use more extensive income tests, which presumably would include deeming in instances where the spouses cease to live together, i. e., where one spouse is institutionalized. In evaluating the needs of the couple to determine the applicant's income, however, the state must make reasonable adjustments which correspond to the changed nature of each spouse's expenses once they cease to live together.

ceiving aid under the dependent children, blind, and permanently and totally disabled programs. The eligibility requirements, the act stated, must take into account only such income and resources as are available to the Medicaid applicant and must as well recognize the costs incurred by the individual for medical care. 42 U.S.C. § 1396a(a)(17)(B), (D).

Congress' desire to replace arbitrary means tests in calculating eligibility with more flexible ones appears clearly in the committee and conference discussions of the legislation. Senator Russell Long, presenting a summary of the conference-approved bill, noted that the "program for the needy elderly would be revised to require that the States must provide a flexible income test which takes into account medical expenses and does not provide rigid income standards which arbitrarily deny assistance to people with large medical bills." 111 Cong.Rec. 18349 (July 27, 1965). *See also* the remarks of Sen. Kuchel, presenting a summary of Senate Finance Committee Report on H.R. 6675, that states must provide "flexible income test which . . . does not provide rigid income standards", 111 Cong.Rec. 16145, July 9, 1965. Likewise, in reporting out its version of the bill, the House Ways and Means Committee expressed its commitment to flexible eligibility standards:

> Another provision is included that requires States to take into account *only such income and resources as* (determined in accordance with standards prescribed by the Secretary [of HEW]) *are actually available* to the applicant or recipient and as would not be disregarded (or set aside for future needs) in determining the eligibility for and the amount of the aid or assistance in the form of money payments for any such applicant or recipient under the title of the Social Security Act most appropriately applicable to him. *Income and resources* taken into account, furthermore, *must be reasonably evaluated by the States.* These provisions are designed *so that the States will not assume the availability of income which may not, in fact, be available* or overevaluate income and resources which are

available. Examples of income assumed include support orders from absent fathers, which have not been paid or contributions from relatives which are not in reality received by the needy individual. H.Rep. No. 213, 89th Cong., 1st Sess. 67 (1965) (emphasis added); *see also* S.Rep.No. 404, 89th Cong., 1st Sess. (1965), reprinted in [1965] U.S.Code Cong. & Admin.News pp. 1943, 2018, using the same language.

Individual supporters of the Medicaid legislation shared this view of flexible eligibility requirements. In floor remarks, Senator Abraham Ribicoff, for example, stated that the bill would "require that only income and resources actually available to an applicant may be considered in determining need." Furthermore, according to Ribicoff, the bill would require states "to apply a means test on a flexible basis. . . . It is reasonable to allow states to make determinations of need and eligibility for public assistance programs, but it is unreasonable to allow the standards of eligibility to be applied in such a way that they prevent assistance from reaching those who may need it most." 111 Cong.Rec. 15804 (July 7, 1965). Senator Saltonstall said that the bill "provides a more flexible means test". *Ibid.* at 16149; Senator McNamara, a co-sponsor, said that the bill makes a "substantive and meaningful liberalization" in the Kerr-Mills program. *Ibid.* at 15876.

The state may consider as available to the Medicaid applicant or recipient all income of the spouse in excess of those expenses *necessary for the spouse to live in the community.* We agree with the District Court that the amount necessary for the spouse to live in the community shall be calculated on the basis of a reasonable and realistic estimate of the amount necessary to cover the costs of food, clothing, and shelter, which may vary in particular localities. Further, this estimate must take into consideration the reasonable costs of necessary medical care, reasonable expenses of employment, and such other expenses as are reasonably determined by the state to be necessary for the fulfillment of the spouse's *basic living needs.*

The bottom line is that in the formulation of its applicable standards the state is not free to act arbitrarily or inflexibly but must stay within the reality of basic, fundamental facts as they apply to the status of the parties under consideration. The state may outline general guidelines for the use of local caseworkers. It must steer clear of rigid, blanket deductions to the exclusion of other factors.

### D. Other Deeming Issues

■ We now turn briefly to plaintiffs' challenge in *Norman* to the state's practice of subtracting the Norman son's Social Security check from the $65 dependent child deduction. We find nothing wrong with the procedure. Contrary to plaintiffs' assertion, the state is not deeming Thomas' income to support his father which would be a clear violation of 42 U.S.C. § 1396a(a)(17)(D).

In calculating Mrs. Norman's income, the state allows her a deduction for the support of her son. But to the extent that her son has income enabling him to support himself, that deduction is reduced. While in this particular case the computation yields the same net result as if the son's income were added to the income of Mr. and Mrs. Norman and then a $65 deduction were taken, the same would not be true if the son's income exceeded the $65 deduction. In short, the Social Security check eats up a deduction; it is not deemed income. The state's practice does not violate the statute.

### E. Constitutional Issues

■ Plaintiffs argue that deeming creates an irrebuttable presumption which denies due process and violates plaintiffs' rights of equal protection. They contend also that it illegally infringes upon the fundamental right to marriage.

The Supreme Court has upheld irrebuttable presumptions in a number of situations involving social services eligibility and has distinguished those cases in which the Court has struck down irrebuttable presumptions. *See, e. g., Califano v. Jobst,* 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977) (irrebuttable presumption of lack of dependency under Social Security Act when disabled dependent child of covered wage earner married an individual who is not entitled to benefits under the Act); *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976) (irrebuttable presumption under Black Lung Benefits Act of total disability due to pneumoconiosis based on clinical evidence of complicated pneumoconiosis); *Mathews v. Lucas,* 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976) (presumption of dependency under Social Security Act of legitimate child of insured parent upon parent's death); *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (irrebuttable presumption of duration-of-relationship Social Security eligibility requirement). *See also Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

At issue in *Salfi* was a Social Security regulation denying widow's benefits to one widowed within nine months of the marriage. The district court had held the regulation invalid as an irrebuttable presumption that marriages which did not precede the wage earner's death by at least nine months were entered into for the purpose of securing Social Security benefits. The Supreme Court reversed, holding that a non-contractual claim to receive funds from the public treasury enjoys no constitutionally protected status, though of course Congress may not invidiously discriminate among such claimants on the basis of a bare Congressional desire to harm a politically unpopular group or on the basis of criteria which bear no rational relation to a legitimate legislative goal. *U. S. Department of Agriculture v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973).

The Court in *Salfi* then articulated the central constitutional question as follows: whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation or quali-

fication would protect against its occurrence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule.

422 U.S. at 777, 95 S.Ct. at 2472–2473.

We find that the deeming process is an acceptable and rational response to legislative concern over abuse of the Medicaid program by spouses who are not financially needy, that it does not invidiously discriminate among claimants, and that it is a proper general rule for the administration of a large fund with a "modicum of efficiency." *See Califano v. Jobst,* 434 U.S. at 53, 98 S.Ct. 95.

We also hold that Mississippi's deeming procedures do not unconstitutionally infringe upon the right of marriage. Mississippi's policy of considering the income of one spouse as available to meet the needs of the other spouse only incidentally burdens the marriage relationship. The Supreme Court has repeatedly recognized the "basic difference between direct state interference with a protected activity and state encouragement of an alternative activity consonant with legislative policy." *Maher v. Roe,* 432 U.S. 464, 475, 97 S.Ct. 2376, 2383, 53 L.Ed.2d 484 (1977). *See also Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

The consideration of part of one spouse's income as available to the other is based upon the congressional belief that "it is proper to expect spouses to support each other." S.Rep.No. 404, 89th Cong., 1st Sess. (1965), reprinted in [1965] U.S.Code Cong. & Admin.News pp. 1943, 2018. The consideration of the financial responsibility of one spouse for the other is not a substantial obstacle or burden on the right of marriage. It is consistent with the belief that out of the marriage relationship arises a duty for the spouses to provide for each other's medical expenses.

### F. *Garnishment of OASDI Benefits*

Plaintiffs argue that in determining eligibility for and the amount of benefits of Medicaid, Mississippi considers payments made to one spouse under Title II of the Social Security Act (OASDI), 42 U.S.C. § 401 *et seq.,* available to the other spouse and that this is a garnishment prohibited by 42 U.S.C. § 407, which provides:

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

We disagree. A garnishment is a statutory proceeding whereby a person's property, money, or credits in possession or under control of, or owing by, another are applied to payment of the former's debt to a third person by proper statutory process against debtor and garnishee. Furthermore, the statute clearly contemplates a formal legal proceeding. Mississippi does not require that the Title II checks issued by the Social Security Administration be paid to the nursing home or anyone other than the person who is entitled to the benefits. It does not engage in formal, legal proceedings.

It seems that plaintiffs' argument is that Title II benefits should be "protected income" and not counted as income in determining eligibility for Medicaid. However, Congress has specifically provided that benefits of this type *must* be considered as income in determining eligibility for and amount of benefits under the more liberal standards of the SSI program. 42 U.S.C. §§ 1382a(a)(2)(B), 1382a(b). It is clear that the Medicaid statute and regulations prohibit Mississippi from exceeding the liberal standards of the SSI program, 42 U.S.C. § 1396a(f); 42 C.F.R. § 435.121(b)(1). Therefore, Mississippi must consider Title II payments as income.

### III. *Summary*

We hold that Mississippi's practice of deeming the income of one spouse available to the other for Medicaid purposes, both where the spouses live together and where

one spouse is institutionalized, does not conflict with the Medicaid statute or constitutional restraints.

We hold that Mississippi may promulgate general, but not rigid or arbitrary, guidelines and standards as part of a more comprehensive formulation which takes account of differing costs of living in different localities, individual necessary expenses, and the like.

We find that the state's treatment of the income of dependent children of Medicaid applicants does not constitute deeming.

We cannot see that the state's inclusion of OASDI benefits in deemed income is a garnishment.

We affirm that portion of the district court judgment which permits deeming in situations where spouses live together.

We reverse that portion which prohibited deeming in those cases where one spouse is institutionalized.

AFFIRMED in part and REVERSED in part.

